MAPLEWOOD BANK AND TRUST COMPANY, PLAINTIFF, v. ACORN, INC., ET AL, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided October 11, 1985.

*David G. White,* for plaintiff (*Bourne, Noll & Kenyon,* attorneys).

*Thomas M. DeLuca,* for defendant (*Deutsch and Mulvaney,* attorneys).

## ROSEMARY HIGGINS CASS, J.S.C.

This summary judgment motion raises the issue, novel in this State, of whether state courts have concurrent jurisdiction with federal courts in the adjudication of private civil actions pursuant to § 1964(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 *U.S.C.A.* § 1961–1968.[1] I hold that state courts lack such jurisdiction.

In May 1984 plaintiff Maplewood Bank and Trust Company (hereinafter Maplewood) brought suit against defendants, Acorn, Inc., Frank J. Coviello, Dorothy Spurgeon Coviello and William H. Spurgeon (hereinafter collectively Acorn) to collect on certain promissory notes which were overdue. Defendant filed an answer and counterclaim alleging claims for rescission, breach of contract, common law fraud and violation of fiduciary duty. In addition, it asserted a claim under § 1964(c) of RICO seeking treble damages and attorney's fees.

The gravamen of Acorn's RICO claim is that Maplewood fraudulently induced it to enter into and continue a contractual relationship based on a representation that the interest rate Maplewood was charging was based on its "prime rate," *i.e.,* the lowest rate available to its commercial customers, when in fact it was not so based. As predicate acts, Acorn alleged regular use of the mails and wire on at least two occasions and within the last ten years to send false and fraudulent billing

---

[1] Defendant counterclaimant did not bring action under the New Jersey Racketeering Act, *N.J.S.A.* 2C:41–1 *et seq.,* ostensibly because the acts of plaintiff complained of herein all occurred prior to the enactment of this act which became effective June 15, 1981.

statements and receive payments, "racketeering activities" as defined in 18 *U.S.C.A.* § 1961(1)(B).

Maplewood brought a motion for summary judgment as to the entire counterclaim. However, in its brief and at oral argument, it pursued only the issue of the RICO claim, the sixth count of the counterclaim. Thus, I make no determination on the other five counts. Moreover, the questions of whether Acorn alleged the requisite distinction between the RICO "person" and "enterprise" under § 1961(3) and (4), or alleged the requisite RICO injury under § 1962 or pleaded the alleged fraudulent predicate acts with sufficient particularity, become moot in light of my determination. 18 *U.S.C.A.* § 1961(3) & (4), § 1962.

Section 1964(c) of RICO provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. [18 *U.S.C.A.* § 1964(c)]

It is black-letter law that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 *U.S.* 473, 479, 101 *S.Ct.* 2870, 2875, 69 *L.Ed.*2d 784 (1981). Absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state court adjudication, state courts may assume subject-matter jurisdiction over a federal cause of action. *Id.* at 477, 101 *S.Ct.* 2874.

In considering the propriety of state-court jurisdiction over any particular federal claim, the court begins with the presumption that state courts enjoy concurrent jurisdiction. (Citations omitted). Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests. [*Id.* at 478, 101 *S.Ct.* at 2875]

Since RICO has no provision explicitly confining jurisdiction to the federal courts, the question before me is whether Congress implicitly so restricted it. Defendants, relying on the case of *Luebke v. Marine National Bank of Neenah*, 567 *F.Supp.* 1460, 1462 (E.D.Wis.1983) argue that absent an ex-

press statutory directive to the contrary, there is a presumption of concurrent jurisdiction, and their claim should not be dismissed.

While *Luebke* suggests that a RICO claim could have been pursued in the state court, far more compelling is the analysis of this question in the cases of *County of Cook, et al, v. Midcon Corp.*, 574 *F.Supp.* 902 (N.D.Ill.1983) and *Greenview Trading Co. Inc. v. Hershman & Leicher, P.C.*, 108 *A.D.*2d 468, 489 *N.Y.S.*2d 502 (1985), both of which conclude that the statute's language and legislative history rebut the presumption of concurrent jurisdiction.

Looking first at the language of § 1964(c) which enunciates the concept that "any person injured ... *may* sue therefor in any appropriate United States district court," emphasis supplied, the court in *Midcon* noted the similarity between the RICO statute and § 4 of the Clayton Act, 15 *U.S.C.A.* § 15, the statute conferring jurisdiction over federal antitrust laws and which has long been recognized as giving federal courts exclusive jurisdiction over federal antitrust claims. *Midcon*, 574 *F.Supp.* at 912. Reviewing the legislative history of § 1964(c) the court concluded that Congress consciously patterned the RICO section after the antitrust prototype and said:

> Legislators must have known that courts have construed virtually identical language as giving federal courts exclusive jurisdiction over antitrust claims. It would be anomalous for this court to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction over civil claims by persons injured by violations of 18 U.S.C. § 1962. [*Ibid.*]

Adopting the reasoning of the *Midcon* decision, the New York court in *Greenview* also suggested a rationale for the exclusive jurisdiction of the federal courts.

> What quickly emerges from a study of the statute is that the adjudication of civil RICO claims involves not just the interpretation of a single Federal statute, however complicated, but rather the interpretation and application of a number of Federal statutes that constitute predicate offenses, statutes with which the Federal courts are obviously far more familiar from ongoing experience than State courts. Indeed, Federal RICO litigation has resulted in significant and pervasive disagreements among the Federal district and circuit courts as to the correct interpretation and application of one or another aspect of the statute. State jurisdiction over civil RICO claims would inevitably

involve State courts in resolving issues which have divided, and continue to divide, Federal district and circuit courts. [*Greenview, supra,* 489 *N.Y.S.*2d at 506; citations omitted]

The factors which generally commend exclusive federal-court jurisdiction over an area of federal law—the desirability of uniform interpretation, the expertise of federal judges in federal law and assumed greater hospitality of federal courts to peculiarly federal claims, *Gulf Offshore Co., supra,* 453 *U.S.* at 483, 484, 101 *S.Ct.* at 2877, 2878, militate the same conclusion.[2]

For the foregoing reasons, plaintiff's motion for partial summary judgment as to the sixth count of defendant's counterclaim is granted.

---

[2]While the recent companion decisions of the United States Supreme Court in *Sedima, S.P.R.L. v. Imrex Company, Inc., et al,* — *U.S.* —, 105 *S.Ct.* 3275, 87 *L.Ed.*2d 346 (1985) and *American National Bank and Trust Company of Chicago v. Haroco, Inc.,* — *U.S.* — 105 *S.Ct.* 3291, 87 *L.Ed.*2d 437 (1985) do not address the issue of concurrent jurisdiction, the *Sedima* case does discuss at some length the legislative history of the private treble damage action, noting that when it was proposed, Representative Steiger called for one "similar to the private damage remedy found in the anti-trust laws." At a later point in the decision, Justice White, writing for the majority, referred again to the legislative history and said: "The clearest current in that history is the reliance on the Clayton Act model ...."