538 A.2d 528

The VILLAGE AT CAMELBACK PROPERTY OWNERS
ASSN. INC., Appellant,

v.

Frank P. CARR, III, Individually, and Frank P. Carr, III t/a
Frank P. Carr, III Realty, Camelback Associates, Inc. t/a The
Village at Camelback, Frank Enterprises, Inc., Chateau Asso-
ciates, Ltd., Side II, Inc. Side II Associates, Ltd. and Side II
Associates, Ltd. t/a Ski Side Village.

Superior Court of Pennsylvania.

Argued May 6, 1987.

Filed Feb. 16, 1988.

454

Mark P. Pazuhanich, Stroudsburg, for appellant.

John R. Carroll, Philadelphia, for appellees.

Before BROSKY, WIEAND and BECK, JJ.

BECK, Judge:

This is an appeal from the trial court's grant of preliminary objections. Appellant plaintiff is an incorporated association of property owners (the "Association") at a residential townhouse development known as The Village at Camelback (the "Village"). Appellees defendants, all of whom were allegedly involved in the development, marketing and/or management of the Village, are an individual named Frank P. Carr, III, a sole proprietorship owned and operated by Mr. Carr under the name of Frank P. Carr, III Realty ("Carr Realty"), Camelback Associates, Inc. ("Camelback"), Frank Enterprises, Inc. ("Frank Enterprises"), Chateau Associates, Ltd. (a limited partnership) ("Chateau"), Side II, Inc. ("Side II"), and Side II Associates, Inc. (a limited partnership) ("Side II Associates"). The complaint alleges that Mr. Carr was either a controlling stockholder, officer and director of the corporate defendants or a controlling general partner or in control of the general partner of the limited partnership defendants.

On June 11, 1986, the Association filed a twelve-count complaint against the defendants. The complaint contains numerous allegations of wrongdoing by the various parties, including, *inter alia,* improper operation of the Association itself during the period when the Association was controlled by certain of the defendants, improper design and construction of the Village, failure to file tax returns and keep proper accounting records for the Village, failure properly to budget certain reserves for the use of the Village, failure to establish an appropriate level of dues and assessments for the Village, use by various defendants of property of the Village for their own business purposes, failure to turn over funds to which the Association was entitled, and failure to turn over to the Association title to certain facilities and lands of the Village. The specific theories of relief that the complaint pleads are as follows:

*Counts One and Two.* These counts are against Carr and Camelback and set forth contract claims for breach of

the development plan of the Village and of various express and implied warranties.

*Count Three.* This count, against all defendants, is for unjust enrichment based upon defendants' alleged unauthorized use of the sports complex at the Village in the development of defendants' own business activities.

*Count Four.* This count is against Frank Enterprises alone and alleges a breach of the management contract of the Village.

*Count Five and Six.* These counts, against Carr, Camelback and Frank Enterprises, allege negligence and misrepresentation in the developing, marketing and operation of the Village as well as of the Association.

*Count Seven.* This count alleges conversion of Association funds by Carr, Camelback and Frank Enterprises.

*Count Eight.* This count alleges promoter liability of Carr and Camelback.

*Count Nine.* This count alleges a breach of fiduciary duty by Carr and Camelback as members of the Board of Directors of the Association.

*Count Ten.* This count, against Carr and Camelback, alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68 (1982 & Supp. III 1985).

*Count Eleven.* This count, against all defendants, seeks equitable relief in the form of the turnover of the Village's sports complex to the Association for its exclusive use.

*Count Twelve.* This count seeks to impose individual liability on Carr on a theory of piercing the corporate veil.

All defendants filed a variety of preliminary objections to the Complaint. On October 6, 1986, the trial court entered an order that:

1. Granted the demurrer of Carr to all counts of the complaint;

2. Granted the demurrer of all defendants to Counts III and XI of the complaint;

3. Dismissed Count X of the complaint for lack of jurisdiction; and

4. Denied the remaining preliminary objections.

Appellant timely appealed this order insofar as it granted certain of the preliminary objections and dismissed Count X. On December 5, 1986, appellees filed a Motion to Quash the appeal, alleging that it had improvidently been taken from a non-final order. On March 20, 1987, by per curiam order, we quashed the portion of the appeal that was taken from the trial court's grant of the demurrers to Counts III and XI. Thus, we now review only those portions of the trial court's order relating to the dismissal of Carr, the individual defendant, from the case and relating to the dismissal of Count X based upon lack of jurisdiction of a state court over a civil RICO claim.

## DISMISSAL OF INDIVIDUAL DEFENDANT

As we have indicated above, although Counts III and XI of appellant's complaint were dismissed, the appeal from the dismissal of those counts has been quashed. Therefore, our consideration of the dismissal of the individual defendant Carr from all counts of the Complaint will not include any consideration of his dismissal from those two counts. The remaining counts in which Carr was included as an individual are Counts I and II (breach of contract and of express and implied warranties), Counts V and VI (negligence and misrepresentation), Count VII (conversion), Count VIII (promoter's liability), Count IX (breach of fiduciary duty), Count X (RICO),[1] and Count XII (piercing corporate veil).

1. In the second section of this Opinion we separately consider whether Count X, pleading violations of RICO, should have been dismissed as to all defendants for lack of jurisdiction by a state court and we decide that such dismissal was inappropriate. Carr and all the other defendants filed preliminary objections in the nature of a demurrer to the RICO count as well as their preliminary objections asserting lack of jurisdiction. The trial court specifically did not decide whether Count X stated a claim for relief under RICO since it held that it had no jurisdiction over that count. Since we decide that this was error, we will remand to the trial court with an instruction that it decide, as

Preliminarily we note that preliminary objections in the nature of a demurrer must be sustained only where it appears with certainty that upon the facts pleaded in the complaint "the law will not permit recovery by the plaintiff." *Harley Davidson Motor Co., Inc. v. Hartman*, 296 Pa.Super. 37, 41, 442 A.2d 284, 285–86 (1982) (quoting *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 282, 259 A.2d 443, 445 (1969)). We must also "bear in mind that preliminary objections to a complaint in the nature of a demurrer admit every well pleaded material fact, plus all reasonable inferences therefrom." *International Union of Operating Engineers, Local No. 66 v. Linesville Const. Co.*, 457 Pa. 220, 322 A.2d 353 (1974).

The trial court dismissed Carr from all counts for two central reasons. First, the court reiterated the long standing principle that one of the central reasons for conducting business in corporate form is the avoidance of personal liability by those holding equity in the corporation and the limitation of the risk of those persons to the value of their equity. The trial court further stated that because of this goal, our Business Corporations Law permits liability for corporate debt to be assessed against shareholders, officers and directors in only the most limited of circumstances. Trial Court Opinion at p. 12. (citing Pa.Stat.Ann. tit. 15 §§ 1609, 3136 (Purdon 1967)).

Lastly, the trial court concluded that it should be particularly loath to pierce the corporate veil where the complaint is, in the trial court's view, premised on numerous written documents, all attached as exhibits to the complaint, which set forth the rights and liabilities of the parties and which do not at any point indicate a personal undertaking by Carr as shareholder, officer or director. Although the trial court acknowledged that the complaint alleges that Carr himself made representations outside of the documents, the court saw these as clearly having been made by Carr as agent for

to all defendants, whether Count X states a claim for relief under RICO.

the corporate entities and not as binding on Carr individually. Thus, the trial court held:

> We hold that where the relationship between parties to litigation is premised on written documents clearly giving notice of a party's corporate status, an action for breach of those agreements cannot impose individual liability on an officer, director, or shareholder of such corporate party.

Trial Court Opinion at 14.

We have carefully reviewed the limited record developed thus far in this case and agree with the trial court that the action is to some degree premised on numerous documents setting forth the development plan for the Village at Camelback. We also agree that nowhere in these documents does there appear any representation, warranty or undertaking by Carr individually. However, this factual conclusion does not lead us to the legal conclusion that Carr cannot be found individually liable under any of the theories pleaded in the complaint. Rather than taking the more sweeping approach of the trial court in analyzing Carr's potential liability, we will analyze each theory pleaded in the complaint against Carr separately, in that the legal principles applicable to assessing Carr's potential liability differ depending on the legal theory of relief underlying each count.

We note at the outset that the manner in which this 44 page complaint is drafted makes an organized analysis exceedingly difficult. Appellant chose to make 81 factual allegations in an introductory section of its complaint and to follow this with 12 separate counts incorporating by reference all of the foregoing paragraphs, seemingly without regard to which of the prior factual allegations are relevant to each particular count. Moreover, the last count does not in fact plead a separate cause of action or theory of relief at all, but rather seeks generally to pierce the corporate veil of the various corporate defendants to assess liability against Carr individually for the allegedly wrongful acts of those corporate defendants pled in the preceding counts. Although all of the appellees in each count did file preliminary

objections seeking a more specific pleading and in the nature of a demurrer, the trial court denied these objections and appellees have not appealed that portion of the trial court's order. Thus, we have no alternative but to accept for purposes of this appeal that the facts and legal theories so inartfully pleaded are sufficient to state a claim in each count (except the RICO count, *see* footnote 1 *supra*) as against all appellees except Carr.

Having woven our way through this maze of fact and law, we construe the complaint as follows. The counts that include Carr can be divided into four groups. In Counts I and II, appellant pleads contractual theories of relief. In Counts V through VII, appellant pleads tort theories of relief. In Counts VIII and IX, appellant pleads breaches of fiduciary duty. Lastly, in Count X, appellant pleads violations of RICO[2]. However, underlying these theories of relief are three other theories supporting Carr's liability for actions taken as either an individual or as a shareholder, officer and/or director of the various corporate defendants.

First, we perceive appellant's complaint as seeking to assess liability against Carr as an individual, completely apart from his positions as shareholder, officer or director. Thus, appellant seeks to hold Carr responsible for personal undertakings and representations and for wrongful acts Carr allegedly performed completely apart from his position as agent for a corporation. Appellant also apparently seeks to impose liability on Carr as an officer of the corporate defendants for tortious actions of the corporate defendants under the "participation theory". Finally, appellant seeks to impose personal liability on Carr for all of the alleged acts of the corporate defendants through "piercing the corporate veil" of those defendants in order to hold Carr as shareholder liable.

Piercing the corporate veil is a means of assessing liability for the acts of a corporation against an equity

---

**2.** We will not consider this count for the reasons set forth in footnote 1, *supra.*

holder in the corporation. The general standard for pierc-
ing the corporate veil is as follows:

> The legal fiction that a corporation is a legal entity
> separate and distinct from its shareholders was designed
> to serve convenience and justice, ... and will be dis-
> regarded whenever justice or public policy require and
> where rights of innocent parties are not prejudiced nor
> the theory of the corporate entity rendered useless....
> We have said that whenever one in control of a corpora-
> tion uses that control, or uses the corporate assets, to
> further his or her own personal interests, the fiction of
> the separate corporate identity may properly be dis-
> regarded.

*Ashley v. Ashley,* 482 Pa. 228, 237, 393 A.2d 637, 641 (1978);
*Barium Steel Corp. v. Wiley,* 379 Pa. 38, 108 A.2d 336
(1954) (plurality). In deciding whether to pierce the corpo-
rate veil, courts are basically concerned with determining if
equity requires that the shareholders' traditional insulation
from personal liability be disregarded and with ascertaining
if the corporate form is a sham, constituting a facade for
the operations of the dominant shareholder. *Carpenter's
Health and Welfare Fund v. Ambrose,* 727 F.2d 279 (3d
Cir.1983). Thus, we inquire, *inter alia,* whether corporate
formalities have been observed and corporate records kept,
whether officers and directors other than the dominant
shareholder himself actually function, and whether the dom-
inant shareholder has used the assets of the corporation as
if they were his own. *Id.* at 284; *Ashley,* 482 Pa. at 237,
393 A.2d at 641.

■ Contrary to the assertion of appellees in this case,
there is no overriding restriction on piercing the corporate
veil to situations where such is necessary to prevent a
fraud. Piercing the corporate veil is admittedly an extraor-
dinary remedy preserved for cases involving exceptional
circumstances. As some courts have phrased it, liability for
the acts of a corporation may be assessed against the
owners thereof wherever equity requires that such be done
either to prevent fraud, illegality or injustice or when recog-

nition of the corporate entity would defeat public policy or shield someone from public liability for crime. *Zubik v. Zubik*, 384 F.2d 267 (3d Cir.1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Nevertheless, the corporate existence can be disregarded without a specific showing of fraud. As we recently stated in *Rinck v. Rinck*, 363 Pa.Super. 593, 526 A.2d 1221 (1987):

> Appellant argues that the corporate veil cannot be pierced unless the court makes a specific finding that he used his professional corporation to commit fraud, illegality or wrongdoing. This is a statement frequently made in the decided cases. Appellant's reliance on this general language, however, fails to acknowledge the scope of the rule which permits the separate corporate entity to be disregarded whenever it is necessary to avoid injustice.

*Id.*, 363 Pa.Superior Ct. at 597, 526 A.2d at 1223.

In *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983), the Supreme Court both clarified the fundamental theory of "piercing the corporate veil" and distinguished that theory from the "participation theory," i.e. an attempt to assess direct liability in tort against a person acting as an officer or director of a corporation:

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978).

*Id.*, 503 Pa. at 621, 470 A.2d at 89–90. The *Wilks* Court also confirmed that Pennsylvania law recognizes the partic-

ipation theory as a basis of liability, noting, however, that a corporate officer could be held liable under that theory only for misfeasance, not for mere nonfeasance. *Id.*, 503 Pa. at 621–22, 470 A.2d at 90; *Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 524 A.2d 896 (1987).

Applying these two distinct theories to the complaint before us, we conclude that the trial court mistakenly construed appellants' complaint as seeking to assess direct liability only against the various corporate entities allegedly owned or controlled by Carr and as seeking to assess liability against Carr himself only by "piercing the veil" of these entities to reach Carr as shareholder. In other words, the trial court placed overriding emphasis on Count XII of the complaint (in which appellant pleads its piercing the corporate veil theory) and incorrectly found that Count deficient. Moreover, the court apparently ignored the fact that appellant has also pled certain facts against Carr as an individual, alleging that he undertook personal obligations in connection with the Village, committed torts in his capacity as an officer of the various corporate defendants, and breached a personal fiduciary duty.

We, on the other hand, find that appellant has pled sufficient ultimate facts to support relief against Carr as an individual and as a corporate officer in addition to pleading facts that might support piercing the corporate veil of the various corporate defendants in order to assess liability against Carr for the acts of the corporate entities. We will discuss the various counts seriatim.

■ Under counts I and II, appellant seeks recovery for breach of certain express and implied warranties. Appellee Carr contends that the only warranties made to the appellant Association are those found in the documents attached to the complaint which constitute the "Development Plan". Carr argues that he cannot be individually liable for breach of any such warranty since none of these documents contain any personal undertaking by Carr and he is not a signatory to any of them.

Appellant counters that the "Development Plan" actually consists of both the documents attached to the complaint and numerous representations and warranties made by "Carr and/or Camelback" orally either in person or on the telephone. Complaint at paragraphs 35–39.[3] Thus, in Counts I and II appellant alleges that Carr personally extended oral warranties, to which he is personally bound, in addition to those found in the documents. Moreover, in Count XII, appellant seeks to pierce the corporate veil and hold Carr liable for the actions of Camelback that are allegedly in breach of the express and implied warranties in the documents themselves.

We find that appellant has, in the most general terms, set forth a claim against Carr individually for breach of warranties personally extended by Carr. Read as a whole, the complaint alleges that legally binding promises and representations were made by Carr in his individual capacity, that those promises and representations were not fulfilled or were untrue, and that the members of the association relied upon those promises and representations to their detriment. We find these allegations, which we must at this juncture accept as being true, minimally sufficient to state a claim against Carr individually.

We recognize of course that it is possible, perhaps even likely, that it will later become apparent that Carr assumed no enforceable personal undertakings and is entitled to judgment on the pleadings or summary judgment. Nevertheless, at this point in time, bearing in mind the standards for sustaining a demurrer, we cannot say that Carr should have been dismissed outright from these counts. *See Wilks*

3. Throughout this complaint, in every paragraph where appellant pleads an allegation against Carr and one of the corporate defendants, appellant alleges that Carr "and/or" the corporate defendant committed the alleged acts. This usage suggests that appellant does not actually know and therefore cannot specifically allege that the specific acts were done by Carr personally. Nevertheless, we will not allow this unfortunate use of an unclear connector to result in the demise of appellant's complaint. We read the allegations against Carr "and/or" a corporate defendant to include an allegation against Carr as an individual.

*v. Milzoco*, 503 Pa. at 623, 470 A.2d at 90–91 (complaint which, when read as a whole, states enough ultimate facts to support liability, even if only in the most general terms, survives demurrer).

■ We further find, once again reading the complaint as a whole, that appellant has sufficiently pleaded the ultimate facts necessary to pierce the corporate veil and assess liability against Carr for the actions of Camelback in allegedly breaching the warranties and representations in the documents attached to the complaint. The specific averments as to this issue are in Count XII, which incorporates all prior paragraphs of the complaint. Count XII alleges that it would be inequitable for the corporate "facades" of the corporate defendants to shield Carr from individual liability. Count XII then proceeds to allege that the corporate defendants are the alter egos of Carr because:

(a) the corporations were insufficiently capitalized at the outset;

(b) there was an intermingling of funds between and among the corporations as well as with personal assets of Defendant Carr;

(c) other officers and directors, if any, of the corporations were not functioning;

(d) the corporations failed to observe corporate formalities;

(e) the corporations did not pay dividends in the regular and ordinary course of their business; and

(f) in conducting the business affairs of the corporations Defendant Carr consistently held himself out as individually conducting such affairs without use of the corporate names and without identifying that his actions were taken as an officer or employee of the corporation.

Complaint at paragraph 142.

Thus, appellant has pled that the precise factors that have compelled numerous other courts to pierce the corporate veil are present in this case. Although such generalized pleading is not favored in that it does not provide in detail the material facts supporting the pleaded ultimate

facts, this is not a deficiency that warrants the extreme sanction of dismissal on demurrer. In a similar context, the Commonwealth Court ruled that allegations in support of piercing the corporate veil that were very similar to those found in the instant complaint were sufficient to withstand a demurrer. *Commonwealth, Department of Environmental Resources v. Peggs Run Coal Co.,* 55 Pa.Commw. 312, 319, 423 A.2d 765, 768–69 (1980).[4] In *Peggs Run,* plaintiff had also pleaded such factors as undercapitalization, intermingling of corporate and personal affairs and failure to adhere to corporate formalities. Commonwealth Court concluded that these factors may constitute adequate legal basis for imposing personal liability on the shareholders of a corporate defendant. *Id.* We are in accord with the Commonwealth Court's resolution of this issue. We cannot say with certainty that this complaint is facially devoid of merit with regard to piercing the corporate veil and, therefore, cannot sustain Carr's demurrer on this ground.

■ Counts V through VII plead various tort theories of relief. As to these, our analysis is straightforward. These counts allege that Carr personally committed negligence, misrepresentation and conversion. Additionally, under Count XII, appellant seeks to assess liability against Carr personally for the same tortious actions of Camelback and Frank Enterprises, two of the corporate defendants.

Insofar as appellant here attempts to hold Carr personally liable for the torts of the corporation under the theory of piercing the corporate veil, the analysis of the sufficiency of

**4.** We recognize that in *Peggs Run,* defendant had not only demurred to the complaint but had also filed a motion to strike the complaint for failure to plead sufficient material facts in support of the general piercing the corporate veil allegations. Although the Commonwealth Court held that the complaint survived the demurrer, it did note that plaintiff had agreed to amend its complaint to plead additional material facts. *Id.* In the instant case, we note that Carr also filed preliminary objections seeking greater specificity but the trial court denied these objections and Carr has not appealed from this ruling. Therefore, we will not consider this question.

Count XII set forth above is equally applicable. Appellant has pleaded enough to survive a demurrer on this ground.

Insofar as appellant attempts to hold Carr individually liable for the commission of the three named torts, we perceive appellant as pleading that Carr personally participated in the tortious acts of the corporations and that he is, therefore, liable under the "participation theory". Once again, we conclude that appellant has pleaded sufficient ultimate facts to survive a demurrer. In this regard, appellant has alleged that Carr, presumably acting in his capacity as an officer of the corporate defendants, personally participated in negligent acts, misrepresentations and conversion. Indeed, reading the complaint as a whole, it appears clear that appellant asserts that Carr was the sole moving force behind all of the corporate defendants and was directly involved in all of their actions pertinent to this dispute. The trial court's grant of Carr's demurrer to Counts V through VII was improper.

■ Lastly, we consider appellant's allegations of breach of fiduciary duty and promoter's liability found in Counts VIII and IX. Count VIII alleges that as promoters, Carr individually and Camelback breached a duty to appellant of good faith and fair dealing in marketing the Village at Camelback development. We must conclude that to the extent this count pleads a cause of action against the corporate defendant, as the trial court concluded that it did, it also flows from the foregoing analysis that it equally pleads a cause of action against Carr. All of the allegations in the count are made against both Carr and Camelback. Thus, whether we analyze the count to plead individual liability or liability for the acts of Camelback through piercing the corporate veil, Carr must nevertheless remain as a defendant.

■ Finally, we consider Count IX, which seeks to assess liability for breaches of duty by Carr as an individual director of the appellant corporation. The complaint specifically alleges that Carr *as an individual* was a director of the appellant corporation until at least 1980 and in that

capacity breached his fiduciary duty to the corporation. *See* Complaint at paragraphs 47 and 124. It is hornbook law that a corporation has a cause of action against its officers and directors for breach of fiduciary duty. *Fitzpatrick v. Shay*, 314 Pa.Super. 450, 461 A.2d 243 (1983). Here there is no issue of participation in the acts of a corporation or piercing the corporate veil. The complaint simply alleges breaches of fiduciary duty by an individual director. The demurrer as to Count IX cannot be sustained.

The trial court's grant of the demurrer of the individual defendant Carr as to all counts is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

## JURISDICTION UNDER CIVIL RICO

■ Count X of appellant's complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982 & Supp. III 1985) (RICO). The trial court dismissed this count as to all defendants since it found that jurisdiction of civil claims under RICO was vested exclusively in the federal courts. We find that the trial court erred in this conclusion and, therefore, we reverse the trial court's dismissal of Count X of the complaint.

We begin with a brief review of the substantive provisions of and policies underlying RICO. RICO, enacted as Title IX of the Organized Crime Control Act of 1970, permits a civil action in which plaintiff can recover treble damages for injury sustained by reason of a violation of RICO's substantive provisions. As the Supreme Court has described RICO, the Act "takes aim at 'racketeering activity', which it defines as any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy, securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 481–82, 105 S.Ct. 3275,

3278, 87 L.Ed.2d 346 (1985). These acts constituting racketeering activity are commonly referred to as the "predicate offenses" under RICO.

Specifically, RICO prohibits a "person" from "investing in", "acquiring", or "conducting the affairs of" an "enterprise" engaged in or affecting interstate commerce by means of a "pattern" of racketeering activity, as defined above. It also prohibits conspiring to commit any of these acts. 18 U.S.C. § 1962. RICO defines a "pattern" of racketeering activity as at least two acts of racketeering activity committed within ten years of each other, one of which occurred since the passage of RICO. *Id.* § 1961(5). The "enterprise" requirement of RICO is defined broadly to include any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not constituting a legal entity. *Id.* § 1961(4). The "person" referred to is defined as any individual or entity capable of holding a legal or beneficial interest in property. *Id.* § 1961(3). Importantly, RICO also includes a provision permitting a private civil action to recover treble damages for injury sustained as a result of a violation of RICO's substantive provisions. *Id.* § 1964(c).

Both the definitions and substantive provisions of RICO are broad. They have been construed to cover an ever increasing number of factual scenarios. Although the RICO statute generally has been described as an effort by Congress to provide "new weapons of unprecedented scope for an assault upon organized crime and its roots", *Russello v. United States*, 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983), the application of the statute has now exceeded even this originally broad scope. As the *Sedima* Court stated,

> RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.' The statute's 'remedial purposes' are no-

where more evident than in the provision of a private action for those injured by racketeering activity.... *Sedima*, 473 U.S. at 497–98, 105 S.Ct. at 3286 (citations omitted). The *Sedima* Court also noted that the fact that most of the private civil actions presently being brought under RICO are aimed at legitimate businessmen in no way connected with organized crime and are grounded in allegations of "everyday fraud" is not an indication that the Act has been interpreted in a manner inconsistent with Congressional intent. In fact, the *Sedima* Court found that Congress clearly intended that civil RICO have precisely such a broad scope. *Id.* at 498–500, 105 S.Ct. at 3286–87. Indeed, the inclusion in the definition of racketeering activity of mail and wire fraud as defined by federal law, 18 U.S.C. §§ 1341 & 1343, opens the door to numerous civil RICO suits where the central allegations of wrongdoing are no more than "garden variety fraud" allegations. The instant case would appear to involve just such a RICO claim.

The specific issue of whether state courts have jurisdiction over civil RICO claims is of first impression in Pennsylvania courts. Only one federal appellate court has decided the issue. On November 12, 1987, the Court of Appeals for the Ninth Circuit held that jurisdiction of civil RICO claims is concurrent. *Lou v. Belzberg*, 854 F.2d 730 (9th Cir.1987). In addition, the Seventh Circuit has stated in dicta that it doubts whether jurisdiction over civil RICO is exclusively federal and the Fifth Circuit has stated that state courts "probably" have jurisdiction over civil RICO claims. *County of Cook v. Midcon Corp.*, 773 F.2d 892, 901 n. 4 (7th Cir.1985); *DuBroff v. DuBroff*, 833 F.2d 557 (5th Cir.1987).

The remaining courts that have decided this issue to date are divided. The cases finding jurisdiction concurrent include *Brandenburg v. First Maryland Savings and Loan, Inc.*, 660 F.Supp. 717 (D.Md.1987); *Village Improvement Ass'n v. The Dow Chemical Co.*, 655 F.Supp. 311 (E.D.Pa. 1987); *Contemporary Services Corp. v. Universal City Studios*, 655 F.Supp. 885 (C.D.Cal.1987); *HMK Corp. v. Walsey*, 637 F.Supp. 710 (E.D.Va.1986), *aff'd on other*

*grounds,* 828 F.2d 1071 (4th Cir.1987); *Carman v. First National Bank,* 642 F.Supp. 862 (W.D.Ky.1986); *Karel v. Kroner,* 635 F.Supp. 725 (N.D.Ill.1986); *Charles Kurz Co. v. Lombardi,* 595 F.Supp. 373 (E.D.Pa.1984); *Luebke v. Marine National Bank,* 567 F.Supp. 1460 (E.D.Wis.1983); *Rice v. Janovich,* 109 Wash.2d 48, 742 P.2d 1230 (1987); *Cianci v. Superior Court,* 40 Cal.3d 903, 221 Cal.Rptr. 575, 710 P.2d 375 (1985).

The cases finding jurisdiction exclusively federal include *Intel Corp. v. Hartford Acci. & Indem. Co.,* 662 F.Supp. 1507 (N.D.Cal.1987); *Massey v. City of Oklahoma City,* 643 F.Supp. 81 (W.D.Okla.1986); *Broadway v. San Antonio Shoe, Inc.,* 643 F.Supp. 584 (S.D.Tex.1986); *Spence v. Flynt,* 647 F.Supp. 1266 (D.Wyo.1986); *Nordberg v. Lord, Day & Lord,* 107 F.R.D. 692 (S.D.N.Y.1985); *County of Cook v. Midcon Corp.,* 574 F.Supp. 902 (N.D.Ill.1983), *aff'd on other grounds,* 773 F.2d 892 (7th Cir.1985); *Ideal Stencil Machine & Tape Co. v. Merchiori,* 600 F.Supp. 185 (S.D.Ill.1985); *Ballarine v. Getty Oil Corp.,* 133 A.D.2d 330, 519 N.Y.S.2d 229 (1987); *Thrall Car Mfg. Co. v. Lindquist,* 145 Ill.App.3d 712, 99 Ill.Dec. 397, 495 N.E.2d 1132 (1986); *Greenview Trading Co. v. Hershman & Leicher, P.C.,* 108 A.D.2d 468, 489 N.Y.S.2d 502 (1985); *Main Rusk Assoc. v. Interior Space Constructors, Inc.,* 699 S.W.2d 305 (Tex.App.1985); *Maplewood Bank & Trust Co. v. Acorn, Inc.,* 207 N.J.Super. 590, 504 A.2d 819 (1985); *Levinson v. American Accident Reinsurance Group,* 503 A.2d 632 (Del.Ch.1985).

As all of the foregoing courts have recognized, the United States Supreme Court has established clear principles to guide our analysis. In *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 107 S.Ct. 2870, 69 L.Ed.2d 784 (1981), the Court stated these principles as follows:

> The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the

federal claim and state-court adjudication. This rule is premised on the relation between the States and the National Government within our federal system....

In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakeable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.

*Id.* at 477–78, 101 S.Ct. at 2875.

Applying these principles to RICO, it is beyond dispute that the statute itself does not expressly oust state court jurisdiction. The only section of RICO that addresses jurisdiction over claims under RICO is Section 1964(c), which provides:

Any person injured in his business or property by reason of a violation of 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit including a reasonable attorney's fee.

*Id.* § 1964(c). This section grants jurisdiction to the federal courts. However, as the *Gulf Offshore* Court stated, "[i]t is black letter law ... that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Id.* at 479, 101 S.Ct. at 2875–76.

It is equally clear that there is no unmistakeable implication from the legislative history of RICO that requires us to conclude that federal courts have exclusive jurisdiction over RICO claims. The legislative history is silent as to this question. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482, 488 (2d Cir.1984), *rev'd on other grounds,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (RICO's "legislative history ... gives little hint of the intended

scope of private action under civil RICO"); Blakey, *The RICO Civil Action in Context: Reflections on Bennett v. Berg,* 58 Notre Dame L.Rev. 237, 249–80 (1982) (review of RICO legislative history). The only subject that received express attention from Congress was whether to include a private civil right of action in RICO at all. The subject of jurisdiction over such actions was not specifically discussed. *Cianci,* 40 Cal.3d at 912, 221 Cal.Rptr. at 579, 710 P.2d at 379. Indeed, as other courts considering this question have indicated, one of the principal draftsmen of RICO, Professor G. Robert Blakey, has also confirmed that Congress did not consider the question of state court jurisdiction when drafting the statute.[5] *See Brandenburg v. First Maryland Sav. and Loan, Inc.,* 660 F.Supp. 717, 731 (D.Md.1987) (quoting Professor G. Robert Blakey); *Cianci,* 40 Cal.3d at 912, 221 Cal.Rptr. at 579, 710 P.2d at 379.

The major argument in favor of exclusive federal jurisdiction based upon the legislative history of RICO is that in drafting the jurisdictional provision of RICO, Congress consciously used language akin to that used in Section 4 of the Clayton Act, which expresses the availability of a private right of action under that Act and which has been interpreted to vest exclusive jurisdiction over Clayton Act suits in the federal courts. *See County of Cook v. Midcon Corp.,* 574 F.Supp. 902 (N.D.Ill.1983), *aff'd on other grounds,* 773 F.2d 892 (7th Cir.1985). Reasoning from this use of similar language, some courts have concluded that Congress equally intended jurisdiction under RICO to be exclusively federal. *Id.* at 912; Trial Court Opinion at 8–9.[6]

**5.** Professor Blakey has also expressed his opinion that if Congress had considered this question, it would have made jurisdiction exclusively federal. *Greenview Trading Co., Inc.,* 108 A.D.2d at 472, 489 N.Y.S.2d at 505 (quoting Professor Blakey). We are not persuaded by Professor Blakey's conjecture. We must base our conclusions on what Congress has actually done, not on what they might have done. *Cianci,* 40 Cal.3d at 914, 221 Cal.Rptr. at 580, 710 P.2d at 380 n. 3.

**6.** Other courts have been convinced that jurisdiction was intended to be exclusively federal because of the numerous sections of RICO that grant special enforcement powers to the federal government in connection with RICO matters. These courts see RICO, taken as a whole, as evidencing a silent intent to restrict enforcement of RICO to the

We disagree. We find no unmistakeable implication of exclusive federal jurisdiction from the legislative history of RICO. The legislative history reveals that Congress never expressly considered the jurisdictional question. Given the principle that "state courts may assume subject matter jurisdiction over a federal cause of action absent provision by Congress to the contrary ...", *Gulf Offshore*, 453 U.S. at 477, 101 S.Ct. at 2875, we cannot accept that jurisdiction is exclusively federal simply because Congress borrowed language from Section 4 of the Clayton Act. The legislative history of RICO tells us only that Congress borrowed this language in order to express the availability of a private RICO right of action. Simply because the section that was borrowed from the Clayton Act also addresses the jurisdiction of federal courts over Clayton Act suits and has been interpreted to vest such jurisdiction exclusively in federal courts does not mandate the same conclusion as to RICO. Moreover, our conclusion is further buttressed by the Supreme Court's recent rejection of the same analogy to the Clayton Act in the context of defining the "injury" requirement in RICO. *See Sedima*, 473 U.S. at 485, 105 S.Ct. at 3279; *Lou v. Belzberg, supra.*

Lastly, the broad interpretation to be given to civil RICO, which is mandated not only by the language of RICO itself but also by the *Sedima* opinion, convinces us that Congress did not intend the use of Section 1964(c) to be restricted to an exclusively federal forum. *Contemporary Services Corp. v. Universal City Studios, Inc.*, 655 F.Supp. at 893. As the Seventh Circuit Court of Appeals has cogently stated:

> We doubt whether the analogy to antitrust law is sufficiently strong to conclude that because jurisdiction over antitrust cases is exclusively federal, RICO jurisdiction

federal government and its courts. *Kinsey v. Nestor Exploration Ltd.*, 604 F.Supp. at 1371. We also disagree with this conclusion. The special enforcement powers under RICO are primarily related to criminal enforcement of the statute. In any event, the inclusion of these provisions is not sufficiently persuasive of unmistakeable legislative intent to compel the conclusion that jurisdiction should be exclusively federal.

necessarily must follow suit. Particularly in light of the normal presumption that state courts share concurrent jurisdiction over federal statutes, we would be reluctant to conclude from congressional silence that Congress intended to depart from the usual rule.

*County of Cook,* 773 F.2d at 905 n. 4 (citations omitted).

Having eliminated the first two possible grounds for a finding of exclusive federal jurisdiction as set forth by the *Gulf Offshore* Court, we must now proceed to the somewhat more difficult questions that arise under the third prong of the *Gulf Offshore* analysis. That is, we must determine if there is a clear incompatibility between state court jurisdiction and federal interests, i.e. presumably those interests Congress sought to advance by enacting RICO. This prong of our analysis must further be divided into three areas of inquiry. The *Gulf Offshore* Court has stated that in seeking to find if state court jurisdiction is clearly incompatible with federal court interests, we must look to see if any of three factors arguing in favor of exclusive federal jurisdiction apply. These factors are the desireability of uniform interpretation, the expertise of federal judges in federal law, and the "assumed greater hospitality of federal courts to peculiarly federal claims." *Gulf Offshore,* 453 U.S. at 483–84, 101 S.Ct. at 2878. We are not persuaded that any of these factors require a finding of exclusive federal jurisdiction over federal civil RICO claims.

We recognize that in all areas of the law there is present a desire for uniformity. But in deciding today whether this desire requires us to forego jurisdiction of RICO claims, our true inquiry is whether RICO presents a real possibility of inconsistency in interpretation that will be exacerbated by state court adjudication of RICO claims. We recognize, as have other courts considering this question, that several of RICO's provisions are somewhat vague. *See, e.g., Brandenburg,* 660 F.Supp. at 732 ("pattern of racketeering" is not yet clearly defined); *Cianci,* 40 Cal.3d at 915, 221 Cal.Rptr. at 580, 710 P.2d at 381 (same). However, we are also aware that at the present time, the situation has been

greatly ameliorated by continuing United States Supreme Court clarification of RICO's requirements. Moreover, the Court will continue in future to clarify inconsistencies in interpretation by state courts by reviewing those state court decisions it finds worthy of certiorari. *Brandenburg,* 660 F.Supp. at 733. In any event, based upon the already extant familiarity of our courts with the substantive issues that arise in most civil RICO cases, which we describe more fully below, we see little risk of aberrant decision making by our courts in dealing with RICO claims.

Some have argued that the best support for a finding of exclusive federal jurisdiction under RICO is that adjudication of civil RICO claims involves interpretation of numerous other federal laws because many of the "predicate offenses" constituting racketeering activity arise under these federal laws. *Kinsey v. Nestor Exploration Ltd.,* 604 F.Supp. at 1371. This contention goes both to the factor discussed above, i.e. the risk of inconsistent results, and to the second factor in our analysis, i.e. greater expertise of federal judges on issues of federal law.

Just as we are not persuaded that state courts will have special difficulty in interpreting or applying RICO, thus eroding uniform application of the law, nor are we persuaded that federal judges have greater expertise as to the substantive issues that will arise in civil RICO cases. In fact, state courts clearly have greater expertise as to the many state law crimes that constitute predicate offenses listed in RICO. In addition, as we have previously stated, the most common use of the private remedy afforded by RICO has been in cases such as the instant one, involving "garden variety" fraud. As to this issue, state courts have a long history of expertise, perhaps even greater than that of the federal courts. *Brandenburg,* 660 F.Supp. at 733; *Cianci,* 40 Cal.3d at 915–16, 221 Cal.Rptr. at 580, 710 P.2d at 381. Indeed, particularly in a case like that before us today, the heart of the case is a plethora of state law contract and tort claims to which the RICO claim is appended. Thus, as a whole, it is a matter particularly suited to state court adjudication.

Lastly, we have no fear that our courts will view RICO with less hospitality than do the federal courts. There can be no question that the policy that underlies RICO, namely the elimination of crime in the marketplace, is also a fundamental policy of this Commonwealth, and one that our courts will have no difficulty in fostering through principled decision-making. In 1972 our legislature enacted our own "little RICO" statute. In doing so, it expressed the same policy concerns as those that underlay the enactment of federal RICO. 18 Pa.Cons.Stat.Ann. 911 (Purdon 1983). Moreover, the presence of this statute in our state law further buttresses our previous conclusion that our courts will have no difficulty in adjudicating RICO claims, since they have had experience with a similar state statute for fifteen years.[7] *Cianci*, 40 Cal.3d at 915, 221 Cal.Rptr. at 581, 710 P.2d at 381.

We hold that jurisdiction over claims brought under Section 1964(c) of RICO is concurrent. The trial court's grant of appellee's preliminary objections to Count X of the complaint on the ground of lack of jurisdiction was error.

The trial court's grant of individual defendant Carr's demurrer is reversed. The trial court's dismissal of Count X of the complaint for lack of subject matter jurisdiction is also reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. The trial court is specifically directed to determine whether Count X states a cause of action under RICO. Jurisdiction is relinquished.

WIEAND, J., files concurring and dissenting opinion.

7. Appellee is correct in stating that our state RICO law does not provide for a private right of action for damages like that found in Section 1964(c) of federal RICO, pursuant to which appellant brings its RICO claim. We do not, however, conclude therefrom that it would be inconsistent for us to decide that our courts have jurisdiction to enforce the federal law that provides this right of action. Simply because our state law does not provide for this type of action is irrelevant to whether Congress, in enacting federal RICO, intended state courts to have jurisdiction to enforce the remedy that Congress has provided under federal law.

WIEAND, Judge, concurring and dissenting:

I join the majority's decision holding that the state courts have concurrent jurisdiction with the federal courts to hear civil RICO claims. I also concur in the majority's decision to reverse the order of the trial court which sustained preliminary objections in the nature of a demurrer to Counts I, II, V, VI, VII, VIII, IX and XII of the complaint against Frank P. Carr, III, individually. I disagree, however, that in making this decision we can avoid a determination of whether the averments of Counts III and XI are sufficient to state causes of action against Carr.

My review of the record suggests that the trial court properly sustained Carr's preliminary objections in the nature of a demurrer to these two counts. Each count seeks equitable relief which would require that title and possession of the sports complex, together with the right to receive the rents and profits therefrom, be turned over to the corporate appellant. The title to this sports complex is vested in Camelback Associates, a corporation. Therefore, even if these counts are sufficient to state a cause of action against Camelback—a decision which we are not required to make—it is clear to me that they do not state a cause of action against Carr. Therefore, I would affirm the judgment entered in favor of Carr on Counts III and XI of the complaint.