J. A03042/17

2017 PA Super 161

MARK HERSHEY FARMS, INC.,           :      IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                 Appellee           :
                                    :
            v.                      :
                                    :
SCOTT T. ROBINSON, AS EXECUTOR OF   :
THE ESTATE OF LONNIE L. ROBINSON;   :
SCOTT T. ROBINSON, INDIVIDUALLY;    :
MEADOW VALLEY DAIRY, INC.; 915      :
GALEN HALL ROAD ASSOCIATES, L.P.;   :
JESSICA COW II, LLC, AND MED O      :
VALLEY FARMS, A PENNSYLVANIA        :
PARTNERSHIP                         :
                                    :      No. 1070 MDA 2016
APPEAL OF: SCOTT T. ROBINSON        :

Appeal from the Judgment Entered June 14, 2016
In the Court of Common Pleas of Lebanon County
Civil Division at No.: 2010-02612

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

OPINION BY DUBOW, J.:                          **FILED MAY 25, 2017**

Appellant, Scott T. Robinson, individually, appeals from the June 14, 2016 Judgment entered by the Lebanon County Court of Common Pleas after a bench trial. We reverse.

The relevant facts, as gleaned from the certified record, are as follows. Mark Hershey Farms, Appellee, manufactures, sells, and delivers feed for dairy cattle to individual farms. Appellant's father, Lonnie Robinson, owned a dairy farm and purchased feed from Appellee for several years. Lonnie placed the ownership interests for the land and business operations in

various corporate entities. Lonnie purchased feed from Appellee through the entity known as Meadow Valley Dairy, Inc. ("Meadow Valley").

On February 13, 2009, Lonnie died with an outstanding debt owed to Appellee of approximately $118,741.31 for previously delivered feed. Appellant was designated as the Executor of Lonnie's Estate in Lonnie's Will. Lonnie's Will was probated in the Orphan's Court of York County and Letters Testamentary were issued to Appellant on February 19, 2009. Appellant was the sole beneficiary of the Estate.

The trial court described the ownership situation of Meadow Valley as follows:

> Lonnie L. Robinson is the owner of 100 percent of the stock of this corporation, which is the operating corporation for the dairy farm located at 915 Galen Hall Road. All of the operating expenses of Meadow Valley Dairy, Inc. were paid directly by Lonnie L. Robinson from his personal accounts during his lifetime, and after his death, by the estate in order to continue the operation of the dairy farm at 915 Galen [Hall] Road [] until such time as the milk market improves and this asset can be liquidated by the estate.

Trial Court Opinion, 2/8/16, at 5.

After Lonnie's death, Appellant exercised control over the farm and its operations as Executor of Lonnie's Estate and as an employee of Meadow Valley. Appellant continued to order feed from Appellee through Meadow Valley. He failed to pay $294,448.98, and by October 2010, Meadow Valley owed Appellee a total of $413,190.29.

On October 21, 2010, Appellee initiated the instant action by filing a Complaint against Appellant individually, Appellant as Executor of Lonnie's Estate, Meadow Valley Dairy, Inc., 915 Galen Hall Road Associates, Jessica Cow II, LLC, Med O Valley Farms, and Meadow Valley Dairy Farm. Appellee's two counts against Appellant individually were (1) breach of contract based on a handwritten letter that Appellant gave Appellee, and (2) unjust enrichment based on the feed deliveries to the farm from which Appellant benefited. For a remedy, Appellee sought specific money damages. Appellee did not request equitable relief. Appellee never amended or sought leave to amend the Complaint.

Prior to trial, the parties submitted a Joint Pre-Trial Stipulation on February 16, 2015. The Stipulation held all defendants liable for the entire amount of $413,190.29, except Appellant individually. As a result, the only issue remaining for trial was Appellant's individual liability based upon the two counts described above.

Following a bench trial, the trial court rendered its written verdict in favor of Appellee in the amount of $413,190.29. The trial court pierced the corporate veil to find Appellant liable individually for the debts incurred by Meadow Valley Farm, Inc., despite his failure to "[attain] membership/ownership status with regard to the corporate entity." Trial Court Opinion, 2/8/16, at 10. After the filing of Post-Trial Motions, the trial

court also found Appellant individually liable on this alternative basis. Trial Court Opinion, 6/14/16, at 6-8.

On June 14, 2016, following Post-Trial Motions, the trial court filed an Order amending the verdict award to $294,448.98 and entering Judgment.[1]

On June 29, 2016, Appellant filed a timely Notice of Appeal. The trial court filed a Pa.R.A.P. 1925(a) Opinion, but did not order Appellant to file a Rule 1925(b) Statement.

Appellant presents the following issues for our review:

[1.] Whether the [t]rial [c]ourt erred in thrice concluding that it had subject matter jurisdiction over questions concerning the administration of an estate.

[2.] Whether the [t]rial [c]ourt erred in concluding that a defendant exercising control of business entities solely in his capacity as executor of an estate can be held personally liable for breach of contract under a theory of piercing the corporate veil in light of Section 3333.1 of the Probate Estates and Fiduciaries Code, 20 Pa.C.S. § 3333.1.

3. Whether the [t]rial [c]ourt erred in finding that the Appellant's failure to close the Estate and distribute to himself the equitable interests of the [b]usiness [d]efendants to himself was based on "his desire to shield himself from liability while he incurred substantial debt in the corporation" where no evidence of record was presented which would support such a conclusion.

4. Whether the [t]rial [c]ourt erred in declining to consider factors relevant to the ultimate determination of whether upholding the corporate identity would lead to unjust results, holding instead that "the existence of any possible justification for his disregard of corporate formalities and intermingling of

---

[1] The reduction accounted for $118,741.31, which Appellee conceded was "the value of the feed delivered [before Appellant] assumed control of the dairy business." Trial Court Opinion, 6/14/16, at 6.

> personal, estate, and corporate funds is irrelevant to our determination of whether the corporate form should be disregarded."

Appellant's Brief at 4 (reordered).

We review an order following a bench trial with the following principles in mind:

> Our review in a nonjury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the nonjury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Hollock v. Erie Insurance Exchange*, 842 A.2d 409, 413–14 (Pa. Super. 2004) (*en banc*) (citations and quotation marks omitted).

In his first issue, Appellant challenges the trial court's exercise of subject matter jurisdiction over this matter, which Appellant characterizes as "questions concerning the administration of an estate." Appellant's Brief at 4.

The orphans' court's jurisdiction is purely a creature of statute. *In re Shahan*, 631 A.2d 1298, 1301 (Pa. Super. 1993). That court is required, in relevant part, to exercise jurisdiction over the following matters:

Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) …the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

**(1) Decedents' estates.** The administration and distribution of the real and personal property of decedents' estates and the control of the decedent's burial.

\* \* \*

**(12) Fiduciaries.** The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphans' court division, except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore.

20 Pa.C.S. § 711.

In addition to the mandatory exercise of jurisdiction over matters such as those outlined above, the orphans' court is also vested with the authority to exercise non-mandatory jurisdiction, in relevant part, over "[t]he disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section." 20 Pa.C.S. § 712.

In addressing the issue of subject matter jurisdiction at the preliminary objection stage, the trial court in the instant case concluded as follows:

Defendant contends because one of the named Defendants is the Executor of an estate, that this action **must** be brought in the Orphans' Court division. This case, however, is a contract claim and not necessarily related to the administration of Decedent's estate.

* * *

> Because this action involves claims not enumerated in [S]ection 711 and, if we were to agree with Defendant, claims that are enumerated in [S]ection 711, [S]ection 712 provides for concurrent jurisdiction in either the Orphans' Court Division or the Civil Division. Accordingly, we find that this Court has jurisdiction to hear this controversy. Plaintiff brought suit in the Civil Division where it was entitled to do so. We will not disturb this choice of law.

Trial Court Opinion, 9/6/11, at 3-4 (emphasis in original). We agree with the trial court and conclude that the trial court properly exercised subject matter jurisdiction over this matter.

In his second issue, Appellant avers that the trial court erred as a matter of law "in finding [Appellant] liable for breach of contract on a piercing the corporate veil theory[]" because "[t]his theory of liability has been applied almost exclusively to hold an equity holder liable for the debts of a business entity." Appellant's Brief at 10, 13 (citation omitted).

Pennsylvania carries a strong presumption against piercing the corporate veil. ***Fletcher-Harlee Corp. v. Szymanski***, 936 A.2d 87, 95 (Pa. Super. 2007). The corporate entity should be upheld unless specific, unusual circumstances call for an exception. ***See Lumax Indus., Inc. v. Aultman***, 669 A.2d 893, 895 (Pa. 1995).

Further:

> [T]he general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person... In deciding whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the **shareholders'** traditional insulation from personal liability

- 7 -

be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the **dominant shareholder**. Thus, we inquire, *inter alia,* whether corporate formalities have been observed and corporate records kept, whether officers and directors other than the **dominant shareholder** himself actually function, and whether the **dominant shareholder** has used the assets of the corporation as if they were his own.

*Fletcher-Harlee Corp., supra* at 95-96 (emphasis added). In light of these principles of law, only a shareholder of the corporation may be assessed liability for the acts of a corporation. *See Village at Camelback Property Owners Assn. Inc. v. Carr*, 538 A.2d 528, 532 (Pa. Super. 1988) (explaining that only shareholders may be liable for the acts of a corporation when piercing the corporate veil).

The trial court addressed Appellant's arguments regarding his lack of ownership interest as follows:

> While it is true that [Appellant] himself never actually came into a position of direct ownership, we believe that he was capable of holding an equitable interest in the corporation and that he did hold an indirect interest in the corporation by virtue of his status as the sole beneficiary of Lonnie's Estate. His failure to attain an ownership position was due to his own failure to carry through with the administration of Lonnie's Estate and his desire to shield himself from liability while he incurred additional substantial debt in the name of the corporation.

Trial Court Opinion, 2/8/16, at 10-11.

Here, Lonnie's ownership interests in the various corporate entities, including Meadow Valley, passed into his Estate after his death. Appellant did not possess or exercise ownership interests as a shareholder of any of the various corporate entities, including Meadow Valley. We acknowledge

that Appellant was Executor of his father's estate, acted as an employee, and exercised sole control over Meadow Valley, but such realities do not transform Appellant's status into shareholder or equity holder.

The trial court cited no supporting authority for piercing the corporate veil to impose liability on a non-owner or non-shareholder. We can find no support in our case law for such a novel theory of piercing the corporate veil in order to assess liability on someone "capable of holding an equitable interest in the corporation" or "hold[ing] an indirect interest […] as the sole beneficiary[.]" Trial Court Opinion, 2/8/16, at 10. Such a broad rule would be contrary to the limited nature of this narrow exception to the strong presumption against piercing the corporate veil.

The trial court was particularly disturbed by Appellant's actions and, at least in part, "pierced the corporate veil in order to rectify this unjust situation." Trial Court Opinion, 2/8/16, at 11. We find ample support in the certified record for the trial court's factual findings regarding Appellant's utterly irresponsible actions and his "failure to carry through with the administration of Lonnie's Estate and [Appellant's] desire to shield himself from liability while he incurred additional substantial debt in the name of the

corporation[…] in total disregard of the rights of creditors[.]" Trial Court Opinion, 2/8/16, at 10-11.[2]

After careful review, we conclude that the trial court erred as a matter of law in piercing the corporate veil to assess personal liability on Appellant, a non-shareholder and non-equity holder operating the corporation as an employee and Executor of the Estate holding the sole ownership interest. We reverse the June 14, 2016 Judgment.[3]

Order reversed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2017

---

[2] We note that the proper mechanism to address the failure of an executor to administer an estate properly is a surcharge or petition to remove the Appellant.

[3] Based on our resolution above, we need not address Appellant's remaining issues on appeal.