## Hutchinson *versus* Merchants' and Mechanics' Bank of Wheeling.

*Trover for Articles stolen, when sustained.—Statute of Limitations sus-pended until Prosecution terminates.— Civil Remedy not superseded by Criminal Prosecution.*

1. Trover lies for the wrongful conversion or appropriation of property by theft, as well as by fraud or trespass: but in the case of theft, as a general rule, the private action for the value of the property stolen, is suspended until the public prosecution for the offence has been duly conducted and ended.

2. Where one stole a large sum of money, and two years after was tried for the theft and acquitted, an action of trover for the sum stolen, brought within six years after the acquittal, was in time, for the Statute of Limitations was suspended until the termination of the prosecution.

3. The public prosecution for the theft 'does not supersede or in any way control the private action for the value of the thing stolen; and as the person wronged by the theft is not chargeable with the conduct of the prosecution, he cannot be affected by the result, even though it be a verdict of acquittal.'

ERROR to the Common Pleas of *Fayette county.*

This was an action of trover, brought in the court below, to September Term 1858, by The Merchants' and Mechanics' Bank of Wheeling against Elijah Hutchinson, for $7000, in the notes of the Bank, under the following circumstances :

In September 1850, the Merchants' and Mechanics' Bank of Wheeling, intending to send $7000 to Cumberland, Maryland, put that sum up in packages, delivered them to John W. Sweeny, who put them in his trunk, which was then placed on the stage-coach running on the National Road between those places.   On the 29th September 1850, while the coach was on its way up Laurel Hill, in Fayette county, about three or four miles east of Uniontown, the straps of the stage boot were cut, and this trunk, with others, was taken and carried away.   Within two years afterwards Hutchinson was arrested and tried for this theft, and on the 12th of September 1852, acquitted.   Some time after this, the officers of the Bank having discovered evidence which con-vinced them that Hutchinson had actually taken the money, in-stituted this suit against him.   To a declaration in the usual form, the defendant pleaded *actio non accrevit infra sex annos.*

On the trial the plaintiffs proved the loss of the money; that the notes were of the denomination of five dollars, and marked by the teller of the Bank with a red O; that some time in 1851, over $1000 in Wheeling notes were found by defendant's father, concealed in the wall of the house at which defendant was stay-ing; that defendant had loaned some of the money to different persons, and paid some debts with it; that he claimed the money which his father had found, but said it was the proceeds of the

[Hutchinson v. Bank of Wheeling.]

sale of his team; and also, that he had confessed this theft to two or more persons, whose character for veracity, however, was afterwards placed in doubt by the testimony offered by the defendant.

Under the charge of the court (GILMORE, P. J.), there was a verdict and judgment in favour of the plaintiffs for $12,000, whereupon the defendant sued out this writ, and assigned as cause for reversal here, the following matters, viz.:

1. The court erred in that part of their charge to the jury in which they say, "another defence is, that this money belonged to the Mineral Bank of Maryland, and therefore the plaintiffs cannot recover. It appears from the evidence that this was a matter of controversy, after the loss, between the two banks. We do not see that the defendant need be very particular in adjusting this controverted question of property; but still, if it appears that the money actually belonged to the Mineral Bank, this action could not be maintained; but we are of opinion that from anything that appears in the evidence, this money belonged to the Merchants' and Mechanics' Bank of Wheeling at the time it was taken."

2. The court erred when they said to the jury, "this larceny, it was shown by the evidence, was committed in September 1850, and this action was not brought until August 1858. This is more than six years from the conversion. A proceeding for the larceny against the defendant was commenced in March 1852, and he was acquitted in September 1852; during the pendency of the prosecution for larceny we are of opinion that this action could not have been maintained."

3. The court erred in saying to the jury that, "previous to the commencement of this prosecution, if the jury believe that he fraudulently concealed the conversion of this money to his own use, the Statute of Limitations would not run; for a fraudulent concealment by the defendant that cause of action had accrued to plaintiffs is a good replication to the plea of the statute, and this will be the case, notwithstanding you may believe from the evidence, that he confessed the larceny or conversion to one, two, or more persons. If it could be shown that previous to the prosecution, the plaintiffs had been informed of the fact of the conversion by the defendant, the statute would commence to run from the time; for it seems to be ruled by the case cited in Buller's N. P. 130-1, that trover will lie for the value of articles stolen; but there is no evidence that plaintiffs knew of this conversion by the defendant before the commencement of this prosecution; after the prosecution was commenced, the right to sue in trover is suspended until the acquittal of the defendant."

4. The court erred in saying to the jury, that "the fact as proved by Edmund Beeson, that Hutchinson had loaned him $500 at different times, was some corroboration of the evidence of Wil-

[Hutchinson *v.* Bank of Wheeling.]

liam Nixon, who swore that Hutchinson told him, in the conversation with him, that he had loaned of this money $300 to Beeson."

The court erred in submitting this case to the jury at all, when the allegation was that the money was stolen, and that the defendant was the thief.

*Fuller* and *Collins*, for plaintiff in error.—1. There was no title to this property shown to be in plaintiffs: Yonee *v.* Neidig, 1 Yeates 19; Flemming *v.* Bevan, 2 Barr 408; Farmers' Bank *v.* McKee, 2 Barr 318.

2. The civil remedy for money stolen is merged in the felony: Tatlock *v.* Harris, 1 H. Bl. 569; Gibson *v.* Minet, Styles 346. As part of the sentence on conviction is to restore the property stolen, there is no other remedy against the felon: Howard *v.* Smith, 2 Durnf. & East 750.

3. The statute of limitations is a bar: Selwyn's N. P. 1382. The court was wrong in holding that the civil remedy was suspended until after the trial for larceny: Boardman *v.* Govet *et al.*, 15 Mass. 338.

4. The comment on the testimony of Nixon and Beeson was erroneous. The fact of loaning Beeson money was no evidence of guilt; and as Nixon could have known this without any communication with Hutchinson, it proved nothing, and did not corroborate him. It was error in the court to say what the effect of Beeson's testimony should be.

*D. Kaine,* for defendants in error.

The opinion of the court was delivered, November 25th 1861, by

LOWRIE, C. J.—Trover, being the proper remedy for the wrongful conversion or appropriation of the property of another, undoubtedly includes appropriations by theft, as well as by fraud and trespass, unless there is some special rule of public policy that excludes them. There is none such; but it has often been held, for the sake of public justice, that the private action of trover is suspended until the public prosecution for the offence has been duly conducted and ended: Lofft 88, 601; 15 Q. B. 566; 2 Ad. & E. 495; 2 Car. & P. 41; 9 B. & C. 208. There are some special exceptions to this, which we need not now explain: 10 Bing. 243; 3 Id. 444. It is thus that the law is generally understood in this state, when the thief can be ascertained and found; and on this rule the case was rightly tried. The rule of course suspended the Statute of Limitations until the claims of the public were satisfied by the termination of the criminal prosecution; and this suit was within six years after that, and therefore in time.

[Hutchinson *v.* Bank of Wheeling.]

The private wrong was not merged in the public one, nor is the public prosecution intended to supersede the private action. Their purposes are entirely different. The person wronged is not chargeable with the conduct of the prosecution, and therefore not affected by an acquittal. Even a conviction and sentence do not discharge his right of action, for a pardon may make it ineffectual for restitution. We do not discover any irregularities or inaccuracies in the trial to the injury of the defendant below.

Judgment affirmed.