584 A.2d 964

**Edward F. DROHAN, Appellant,**

**v.**

**SORBUS, INC., Bell Atlantic Corporation, Louis Ross, Joseph Molnar, John T. Valentino, Thomas Nolan, and Michael Chamberlain.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1990.

Filed Dec. 17, 1990.

Edward J. O'Malley, Wayne, for appellant.

Jon A. Baughman, Philadelphia, for appellees.

Before ROWLEY, McEWEN and CERCONE, JJ.

ROWLEY, Judge:

After his employment with appellee Sorbus, Inc. ("Sorbus"), ended, appellant Edward F. Drohan filed a six-count complaint against Sorbus and the additional defendants/appellees named herein, alleging interference with contract, intentional infliction of emotional harm, breach of contract, wrongful discharge, and violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968. In its order of December 20, 1989, the trial court sustained appellees' preliminary objections to appellant's claims of RICO violations and wrongful discharge. In this timely appeal, appellant contends that the trial court erred in doing so. For the reasons set forth below, we affirm the order of the trial court.

The well-pleaded facts of the case, as set forth in appellant's amended complaint and summarized by the trial court, are as follows: In 1983 appellant began working for Sorbus, a computer maintenance firm, as vice president of marketing. Defendant/appellee Bell Atlantic Corporation ("Bell") acquired Sorbus in 1985. Either Bell or Sorbus then executed an employment agreement with appellant.

Appellant began questioning and attempting to reform Sorbus' commission programs, which were controlled by

defendants/appellees Thomas Nolan, Michael Chamberlain, and Joseph Molnar. Appellant also requested that Sorbus' business practices involving Jacom, a New York company, be investigated. Defendants/appellees Joseph Molnar, John Valentino, and Louis Ross repeatedly rejected appellant's requests.

As a result of appellant's efforts, the individual appellees began trying to force appellant to leave Sorbus. Appellant was eventually forced to choose between a demotion, in the form of a transfer to a position that was slated for elimination, or the termination of his employment with Sorbus. This "transfer or terminate" choice was also presented to other Sorbus employees who challenged appellees' methods. Appellant's employment with Sorbus terminated on February 28, 1988. Although Bell had acquired knowledge of these events by February 1988, it took no action against the individual appellees.

In his amended complaint appellant stated the following counts:

Count I: RICO violations based on 18 U.S.C. § 1962(c), against all defendants

Count II: RICO violations based on 18 U.S.C. § 1962(d), against all defendants

Count III: interference with contract, against Nolan, Molnar, Valentino, and Chamberlain

Count IV: intentional infliction of emotional harm, against all defendants

Count V: breach of contract, against Sorbus

Count VI: wrongful discharge, against Sorbus

In its order of December 20, 1989, the trial court sustained the preliminary objections in the nature of demurrers filed by all defendants to Counts I, II, and IV; sustained, as to the claim for breach of an oral contract, the preliminary objection in the nature of a demurrer filed to Count III by the defendants named therein, but overruled the same with respect to the claim for breach of a written contract; sustained the motion of the same defendants to strike

Count III for failure to attach copies of writings as required by Pa.R.C.P. 1019(h); sustained the preliminary objections in the nature of demurrers to Counts V and VI filed by defendant Sorbus; dismissed all causes of action against Bell and against Louis Ross; and granted plaintiff, appellant herein, leave to replead Counts III, IV, and V within twenty (20) days. The effect of the court's order was to preclude appellant from proceeding with his claims based on allegations of RICO violations (Counts I and II) and wrongful discharge (Count VI). Appellant then filed this timely appeal.

## I. APPEALABILITY

Because the question of appealability concerns the jurisdiction of the appellate court, a non-waivable matter, we may raise such an issue *sua sponte* even where, as in the present case, the parties have not done so. *Fried v. Fried,* 509 Pa. 89, 91, 501 A.2d 211, 212 (1985). As a general rule, where, as here, an order dismisses some but not all counts of a multi-count complaint, the order is interlocutory and not appealable. *Praisner v. Stocker,* 313 Pa.Super. 332, 337, 459 A.2d 1255, 1258 (1983) (*en banc*). Such an order is final, however, if the dismissed counts do not merely state alternate theories for recovery, but instead state causes of action that are separate and distinct from the remaining counts. *Id.,* 313 Pa.Superior Ct. at 341–42, 459 A.2d at 1260.

In determining whether an order is final and appealable, "[a] pivotal consideration ... is whether the plaintiff aggrieved by [the order] has, for purposes of the particular action, been put 'out of court' on all theories of recovery asserted against a given defendant for a given loss." *Sweener v. First Baptist Church of Emporium,* 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987). Put differently, we consider whether the claims that have been dismissed and the claims that remain "request different relief for different harms...." *Daywalt v. Montgomery Hospital,* 393 Pa.Super. 118, 122, 573 A.2d 1116, 1118 (1990). Consideration of the relief requested will resolve the question of

finality in many cases; in other cases additional factors will have to be considered.

In order to determine whether the portions of the order at issue are final and appealable, therefore, we look first to the relief requested by appellant. In Counts I and II appellant alleges that he "has been injured in his business by reason of Defendants' [RICO] violations," and in each of those counts he demands a sum "in excess of $20,000.00 trebled as allowed by RICO, plus interest, costs, and attorney's fees." This measure of relief, which includes treble damages, is sought nowhere else in the complaint. In addition, the fact that the claims stated in Counts I and II are based upon statutory law indicate that they are separate and distinct from the remaining non-statutory claims. *Gatten v. Merzi*, 397 Pa.Super. 148, 150, 579 A.2d 974, 975 (1990); *Hardy v. Pennock Insurance Agency*, 365 Pa.Super. 206, 213, 529 A.2d 471, 475 (1987). We conclude, therefore, that the trial court's order is final and appealable insofar as it precludes appellant from proceeding with Counts I and II.

In Count VI appellant states a claim for wrongful discharge against appellee Sorbus, his employer. Count III, alleging interference with contract, does not include Sorbus among the named defendants. Therefore, in order to determine whether the trial court's order is final and appealable insofar as it precludes appellant from proceeding with Count VI, we compare Count VI to Counts IV, alleging intentional infliction of emotional harm against all defendants, including Sorbus, and Count V, alleging breach of contract against Sorbus.

In Count IV appellant alleged that the individual appellees' "extreme and outrageous" conduct was intended to, and did, cause him to suffer severe emotional distress, and, alternatively, that the individual appellees' actions were within the course and scope of their employment with Sorbus. He sought "compensatory and punitive damages in

an amount in excess of $20,000.00, plus interest and costs of suit."

Count V alleges that Sorbus breached its contract with appellant by refusing to pay him a thirty percent (30%) bonus for 1987, amounting to $24,000.00, as well as additional sums for accrued vacation days "and otherwise" to which he was entitled when his employment with Sorbus ended. In this count appellant claimed damages "in the amount of $24,000.00, plus the value of all benefits to which [he] was entitled, together with interest and costs."

The essence of appellant's claim against Sorbus in Count VI is that his termination "was caused and motivated by his objections to, and requests for an investigation of" the alleged wrongful conduct of appellees and was therefore in violation of the express and implied public policies of the Commonwealth. He sought damages "in an amount in excess of $20,000.00, plus interest and costs of suit."

While the sole harm for which appellant sought relief in Count VI was his allegedly wrongful termination, the harms alleged in Counts IV and V are not so limited. Count V by its own terms states a different claim for relief, and Count IV can fairly be read to encompass conduct that preceded appellant's termination. Therefore, as the harm alleged by appellant in Count VI is different from that alleged in the remaining counts against the same defendant, we conclude that the trial court's order is final and appealable insofar as it precludes appellant from proceeding with Count VI.

## II.  CIVIL RICO

■  To understand the issues concerning Counts I and II of appellant's complaint, it is necessary that we examine several provisions of the RICO Act. As the basis for his right to bring a civil action pursuant to the Act, appellant relies on § 1964(c):

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court

and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. 18 U.S.C. § 1964(c). 18 U.S.C. § 1962, "Prohibited activities," a violation of which must underlie a civil action pursuant to § 1964(c), states in pertinent part as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

Although § 1964(c) refers only to federal courts, state and federal courts exercise concurrent jurisdiction over civil actions brought under the Act. *Tafflin v. Levitt,* 493 U.S. 455, ——, 110 S.Ct. 792, 799, 107 L.Ed.2d 887 (1990), *reh'g denied,* —— U.S. ——, 110 S.Ct. 1942, 109 L.Ed.2d 305 (1990).

The relationship between § 1962 and § 1964(c) is crucial. To recover under § 1964(c), a plaintiff is required

to plead 1) that the defendants committed a violation of § 1962 and 2) that he or she suffered an injury to business or property by reason of such violation. The second of these pleading requirements is commonly referred to as "RICO standing." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1164 (3d Cir.1989). As the United States Supreme Court has explained,

> [a] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.... "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496–97, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (citation omitted), *quoted in Shearin v. E.F. Hutton*, 885 F.2d at 1167. Nevertheless, § 1964 is to be liberally construed. *Id.* at 491 n. 10, 105 S.Ct. at 3282–83 n. 10.

In Count I of his amended complaint appellant alleged that appellees committed acts which constitute violations of § 1962(c). The alleged violations consisted of mail fraud, 18 U.S.C. § 1341, securities fraud, 15 U.S.C. § 78ff, violation of the Travel Act, 18 U.S.C. § 1952, and failing to withhold and remit sums to the federal and state governments, 26 U.S.C. § 7201 *et seq.* and 72 P.S. § 7353. The trial court found that because the harm suffered by appellant did not flow directly from these alleged "predicate acts" (Trial Court Opinion at 8), but instead resulted from Sorbus' decision to fire or constructively discharge him, appellant lacked standing to recover on the basis of § 1962(c).

The trial court reached the same result with regard to Count II. Appellant alleged in Count II that the individual appellees conspired to, and did, engage in a pattern of racketeering activity in violation of § 1962(d), that, as a part of and in furtherance of that conspiracy, they committed certain specified acts "in order to conceal their activities, remove those who questioned those activities, and enable

the conspiracy to continue," and that as a result of appellees' violation of § 1962(d) appellant was injured in his business, having suffered the loss of his position with Sorbus and impairment of his future earning ability. The trial court, however, cited federal case law to show that where a plaintiff failed to make a viable claim under § 1962(a), (b), or (c), a claim could not be made under § 1962(d). Therefore, the court held, appellant lacked RICO standing for Count II as well as Count I. The court acknowledged that in *Williams v. Hall,* 683 F.Supp. 639, 642 (E.D.Ky.1988), it was held that plaintiffs who had been discharged had standing if they could prove that their terminations were overt acts done in furtherance of a RICO conspiracy, but the court evidently found the contrary line of case law to be more persuasive.

Appellant contends in this appeal that the decision of the Third Circuit Court of Appeals in *Shearin v. E.F. Hutton, supra,* which was handed down after the submission of memoranda and oral argument in the trial court, mandates reversal of the court's order with regard to Counts I and II. The plaintiff in *Shearin* contended that she was hired by Hutton Trust as "window dressing" in order to perpetuate the fraud that the firm was legitimate and that she was fired to preserve the same fraud after she refused to participate. While acknowledging that the U.S. Supreme Court in *Sedima, supra,* had discussed RICO standing only in terms of violations of §§ 1962(a) through (c), the Third Circuit nevertheless held that "[n]othing in *Sedima* forecloses the possibility that harm arising from an act predicate to conspiracy, yet distinct from the racketeering acts listed in section 1961(1), might yet confer standing so long as the plaintiff has alleged a violation of section 1962(d)." *Id.* at 1169. In other words, "classic overt conspiracy acts" could qualify as predicate acts for § 1962(d) even if those acts did not in themselves constitute racketeering activity. *Id.* at 1169. The Court concluded that the plaintiff's "hiring and firing plausibly constitute overt acts that not only would establish a conspiracy, but in this case were allegedly

essential to it." *Id.* at 1168. Although the Court went on to hold that plaintiff's hiring did not constitute an injury, it also held that the plaintiff's firing was an injury and that the injury had occurred "by reason of" the defendants' violation of § 1962(d). *Id.* at 1168–70. Accordingly, the Court held that the plaintiff's allegation that she had been fired in furtherance of a conspiracy in violation of 18 U.S.C. § 1962(d) stated a claim for relief under § 1964(c). *Id.* at 1170.

Appellant maintains that, like the plaintiff in *Shearin,* he was fired in furtherance of a conspiracy in violation of § 1962(d).[1] As appellant makes no other argument on appeal, we conclude that he has abandoned any attempt to gain a reversal of the trial court's ruling with regard to his claim based on alleged violations of § 1962(c). Appellees contend that the Third Circuit Court of Appeals erred in interpreting *Sedima* and that in any event appellant has failed to allege that the termination of his employment was caused by an overt act in furtherance of a RICO conspiracy.

To determine whether appellees' latter claim is correct, we turn to the factual allegations stated in appellant's amended complaint. First, appellant alleged in paragraphs 16–23 that from the start of his employment with Sorbus he questioned and attempted to reform the company's commission programs, which he considered excessive and unfair. His position on commissions was opposed by appellees Nolan, Molnar, and Chamberlain, who benefited from the existing policies. As a result, they tried to undermine appellant by denying him information concerning sales activities and policies, directing field personnel to resist significant marketing programs, and interfering with subcontractor relationships. When appellant continued to oppose com-

1. Counsel for appellant acknowledged at oral argument that this Court is not bound by the opinion of the Third Circuit Court of Appeals in *Shearin v. E.F. Hutton.* We note also that the Second Circuit Court of Appeals "cannot agree ... with cases [such as *Shearin v. E.F. Hutton* and *Williams v. Hall* ] that find standing on the basis of *any* overt act in furtherance of the conspiracy, even if it is not a predicate racketeering act." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990) (emphasis added).

mission policies, appellee Ross, who was then president of Sorbus, implemented a reorganization the effect of which was to reduce appellant's access to information concerning field activities, particularly the payment of commissions. Appellant was subsequently offered yet another position, which would have reduced his involvement with commission policies even further.[2] Despite these changes, appellant was orally informed by appellee Ross, both privately and publicly, "that he had done an excellent job, that his new position was a promotion, and that there would be no adverse financial consequences to [him] as a result of that change."

Second, appellant stated that he "is informed, believes and therefore avers that for a substantial period of time during his employment with Sorbus from at least April of 1985 through January of 1987, field personnel ... at the direction of Defendant Molnar, and with the knowledge and consent of Defendants Ross and Chamberlain, and later Valentino, paid cash bonuses to sales personnel on a regular and continuing basis from their personal funds, and then fraudulently inflated their expense accounts in an equal, offsetting amount." According to appellant's allegations in paragraphs 24–27, Sorbus claimed the fraudulent expense payments as deductions for federal and state income tax purposes and did not make the required withholding from the cash bonuses.

In a third group of allegations, set forth in paragraphs 28–31, appellant asserts that during the same period of time he repeatedly challenged and unsuccessfully requested an investigation into Sorbus' practices with respect to Jacom, a New York-based company. Appellant objected to many of Jacom's business practices on the ground that they improperly deprived Sorbus of revenues to which it was entitled, and he also objected to the preferential treatment of Jacom over another firm. Appellant alleged that his transfer was intended to reduce his access to information concerning, and

2. The amended complaint implies but does not definitely state that appellant accepted the position.

his authority over, the situation involving fraudulent expense vouchers and the company's dealings with Jacom.

Appellant then averred in paragraphs 32–38 that as part of "an ongoing effort to embarrass and harass [him] and force his departure from Sorbus," he was made the subject of crude, humiliating, and defamatory remarks at two company events, he was advised in the fall of 1987 that he would not be paid the thirty percent (30%) annual bonus which had been orally promised to him when he joined Sorbus and which had been paid in previous years, and in December of 1987 he received an unfair evaluation based on "intentional and knowingly inaccurate statements made by [appellees] Valentino, Nolan and Molnar...." The campaign against him, appellant asserts, culminated in the following manner:

39. [Appellant] was thereafter informed that his only alternatives were to accept a further demotion in the form of a transfer to a position which would be phased out in the near future, or terminate his employment with Sorbus.

40. On February 28, 1988, [appellant's] employment with Sorbus terminated.[3]

In paragraphs 41–46 appellant asserts that his treatment "was a part of the practice employed by [appellees] of transferring or eliminating Sorbus officers or employees who challenged their fraudulent and unlawful practices." As an example he offers the case of J. Burr Daly, the chief financial officer of Sorbus, who allegedly informed appellee Ross that the company's Denver district had, with appellee Nolan's consent, improperly manipulated the transfer of inventory on the company's books so as to enable appellees to receive compensation to which they were not entitled. As a result, appellant alleged, appellee Ross procured Daly's transfer to a position that was slated for elimination. In paragraph 47, appellant averred that by February of

3. For the purpose of ruling upon appellees' preliminary objections, the trial court inferred from appellant's averments that he had either been fired or constructively discharged.

1988 at the latest Bell had learned, from appellant and others, of the matters set forth in the preceding paragraphs, yet Bell refused to take action against the individual appellees and instead concurred in appellant's termination.

With these allegations, appellant seeks to demonstrate that he, like the appellants in *Shearin v. E.F. Hutton* and *Williams v. Hall,* was discharged because he "questioned, opposed and refused to join in ... illegal activities" (Brief for Appellant at 13). However, nowhere in his amended complaint does appellant assert that he was asked to participate in illegal activities, nor does he state that he, like the appellant in *Shearin v. E.F. Hutton,* threatened to expose such activity to the appropriate authorities. In fact, appellant does not aver that he challenged any aspect of corporate practice because he considered it to be illegal. He objected to Sorbus' commission program because he considered the commissions excessive and unfair, and he objected to Sorbus' relationship with Jacom in the belief that Jacom's business practices improperly deprived Sorbus of revenue and that Jacom should not have been preferred over another firm. Although appellant alleged in Count I of his amended complaint that appellees utilized the mails and traveled in interstate commerce for the purpose of facilitating Jacom's business practices, and that they committed securities fraud by filing financial statements that were false and misleading as to revenues properly owed by Jacom, appellant did not aver that illegality played any part in his objection to the Jacom relationship, or indeed that he knew of any illegality when he objected to the Jacom relationship on other grounds.

Appellant's allegations concerning fraudulent expense payments obviously involve illegal activity, but these allegations do not indicate that appellant challenged the scheme or even that he was aware of it at the time that it occurred.[4]

4. In its summary of the well-pleaded facts of the case, the trial court assumes that appellant's objections to the commission program were based upon the existence of the fraudulent expense account scheme.

44

Similarly, appellant does not aver that he was involved in the situation involving J. Burr Daly, whose employment allegedly was terminated after he uncovered illegal activity within the firm.

Even accepting as true all well-pleaded material facts set forth in the complaint and all reasonable inferences deducible therefrom, as we are required to do in reviewing an order sustaining preliminary objections in the nature of a demurrer, *Field v. Philadelphia Electric Company*, 388 Pa.Super. 400, 405, 565 A.2d 1170, 1172 (1989), we conclude that appellant lacks standing to pursue his claim. He has stated that he was constructively discharged after he persisted in challenging practices that he considered unwise and injurious to Sorbus. He has also stated that appellees engaged in illegal practices and that J. Burr Daly and others were fired for challenging those practices. Appellant does not aver, however, that *he* challenged Sorbus' practices because he considered them to be illegal. At most, we can infer from appellant's amended complaint that his employment was constructively terminated in order to prevent him from discovering, challenging, and/or disclosing illegal practices in the future.

In support of his claim that he has standing to pursue a § 1962(d) claim, appellant cites the following passage from the opinion of the U.S. District Court for the Eastern District of Kentucky in *Williams v. Hall, supra:*

I think the basis for the ruling will become clear if we consider the application of the principals [sic] applied here to a different fact situation.

Suppose several racketeers were to decide to take over a construction company. Suppose they said, "Let's agree to operate this company in violation of the law. Let's rig bids, bribe officials, intimidate and threaten competitors not to bid on jobs and travel in interstate commerce to

The amended complaint does not so indicate, however. Although appellant expressed the belief that the fraudulent expense account scheme had been in existence "from at least April of 1985," he also stated that he questioned the commission program from the beginning of his employment with Sorbus, which was in November of 1983.

accomplish all of this. And, oh yes, let's fire all of the honest employees in the company, so you won't have any opposition in accomplishing our scheme."

Although the fact pattern is different here, the causal relationships are similar. The Court believes that Congress intended to afford discharged employees a civil remedy in such a situation and that the Supreme Court following *Sedima* would so interpret the RICO statute. *Id.* at 644. As the Court itself indicated, however, the fact pattern just described was not that of the case itself. The plaintiffs in *Williams v. Hall* did not allege that they had been fired merely for being "honest employees," but rather that they had been fired for refusing to participate in illegal bribery schemes and the resulting coverup. The observation just quoted is therefore dictum, and it does not persuade us that appellant has sufficiently alleged a nexus between his constructive discharge and a conspiracy on the part of appellees to violate 18 U.S.C. § 1962(a), (b), or (c). Accordingly, we affirm the order of December 20, 1989, insofar as it dismisses Counts I and II of appellant's amended complaint.

## III. WRONGFUL DISCHARGE

In Count VI of his amended complaint, appellant averred that his discharge "was in breach of the express and implied public policies of the Commonwealth of Pennsylvania." In dismissing Count VI, the trial court, citing *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974), and *Tourville v. Inter–Ocean Insurance Company*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *alloc. denied*, 514 Pa. 619, 521 A.2d 933 (1987), stated that there are only two exceptions to the rule that an at-will employee may be discharged for any or no reason: 1) where the discharge was contrary to public policy, and 2) where there was a specific intent to harm the employee. Appellant had not alleged the latter exception, the trial court held, and his discharge did not threaten any clearly discernible public policy.

■ Appellant contends on appeal that he raised both exceptions, public policy and specific intent to harm, in the trial court. According to appellant, he claimed that the individual appellees are liable for tortious interference with his contractual relationship with Sorbus (Count III), or, alternatively, that Sorbus is liable for his wrongful discharge if the actions of the individual appellees were undertaken in the course and scope of their employment (Count VI). Since the trial court allowed him to amend Count III, appellant argues, he should also have been permitted to pursue the "alternative" claim stated in Count VI. Having reviewed appellant's claim, we accept the trial court's interpretation of the issues raised before it. We hold, therefore, that appellant's claim of wrongful discharge based on a specific intent to harm has been waived. *Commonwealth v. National Federation of the Blind*, 471 Pa. 529, 536, 370 A.2d 732, 736 (1977); *Kovach v. General Telephone Company of Pennsylvania*, 340 Pa.Super. 144, 149, 489 A.2d 883, 885 (1985).

■ As to his claim that his discharge implicated a fundamental public policy, appellant notes that in *Village at Camelback Property Owners Association, Inc. v. Carr*, 371 Pa.Super. 452, 538 A.2d 528 (1988), *aff'd*, 524 Pa. 330, 572 A.2d 1 (1990), this Court held that "the policy that underlies RICO, namely the elimination of crime in the marketplace, is . . . a fundamental policy of this Commonwealth. . . ." *Id.*, 371 Pa.Super. at 477, 538 A.2d at 541. The case did not involve a claim of wrongful discharge, however. More importantly, even if we were to recognize "the elimination of crime in the marketplace" as a fundamental public policy in the context of exceptions to the employment-at-will rule, appellant's claim nevertheless fails. As we held in Part II of this Opinion, appellant has not alleged that he was discharged because he refused to participate in or intended to reveal practices that were illegal. Therefore, as appellant's discharge did not implicate a public policy against crime in the marketplace, assuming for the sake of argument that such a policy exists in the present

context, we affirm the trial court's order insofar as it dismisses Count VI of appellant's amended complaint.[5]

Order affirmed.

5. Having disposed of appellant's claim on this ground, we decline to address appellees' argument that Pennsylvania does not recognize a cause of action for wrongful discharge.