633 A.2d 628

**Kenneth Bradley KROEN, Appellant,**

**v.**

**BEDWAY SECURITY AGENCY, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1993.

Filed Nov. 3, 1993.

84

Peter H. Thomson, Sewickley, for appellant.

David J. Singley, Pittsburgh, for appellee.

Before KELLY, POPOVICH and BROSKY, JJ.

POPOVICH, Judge.

This is an appeal from the order of the Court of Common Pleas of Allegheny County which granted summary judgment in favor of appellee. Instantly, appellant contends that the lower court erred in ruling that he is collaterally estopped from litigating the issue of whether appellee discharged him from his employment because of his refusal to submit to a polygraph examination. Further, appellant contends the court erred in determining that he was not constructively discharged from his job by his employer's actions. Finally, appellant submits that the public policy of Pennsylvania prohibits the firing of an employee for his refusal to take a polygraph test and, thus, his wrongful discharge action is viable. We agree with appellant and reverse the lower court's entry of summary judgment and remand for trial.

The record indicates that appellant was employed by appellee as a security officer. Following his initial assignment, appellant was promoted to lieutenant and was assigned to a building located at 441 Smithfield Street in Pittsburgh. Appellant was the on-site supervisor of all shifts in the building. After appellant was assigned to the Smithfield Street building, equipment thefts were reported at that location, and the thefts continued for several months. In March of 1989, appellee asked appellant and other of its employees to submit to

polygraph examinations which were part of appellee's investigation into the thefts. Appellant refused to take the polygraph examination.

Shortly after appellant declined to submit to the polygraph, appellant was transferred from the Smithfield Street site to the Airport Holiday Inn.[1] Appellant was also demoted from lieutenant to guard, his hours of employment per week were reduced from forty to sixteen and his rate of pay was reduced from $5.50 to $4.00 per hour. Although appellant initially indicated that he accepted the change in his employment conditions, he resigned prior to reporting to his new job site.

Subsequent to his resignation, appellant filed a private criminal complaint against appellee and Wayne L. Babish, appellee's executive vice-president, alleging a violation of Pennsylvania's Polygraph Act, 18 Pa.C.S.A. § 7321.[2] The district attorney declined to prosecute the private complaint due to insufficient evidence to prove that appellant was required to submit to the polygraph. Appellant's counsel then petitioned the court for approval of the private criminal complaint pursuant to Pa.R.Crim.P. 133.[3] The trial court ap-

1. Appellee avers that its client at 441 Smithfield Street requested that appellee transfer appellant and other security personnel to other locations.

2. 18 Pa.C.S.A. § 7321, Lie detector tests, provides in pertinent part: "(a) Offense defined.—A person is guilty of a misdemeanor of the second degree if he requires as a condition for employment or continuation of employment that an employee or other individual shall take a polygraph test or any form of a mechanical or electrical lie detector test."

3. Pa.R.Crim.P. 133, in pertinent part, provides:
(a) When the affiant is not a law enforcement officer and the offense(s) charged include(s) a misdemeanor or felony which does not involve a clear and present danger to any person or to the community, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove without unreasonable delay.
(b) If the attorney for the Commonwealth
    (1) Approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;
    (2) Disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter the affiant may file the complaint with a judge of a Court of Common Pleas for approval or disapproval;

proved the private complaint for prosecution and directed the district attorney to proceed. However, before any further action could be taken, appellee and Wayne Babish petitioned the lower court for writs of *habeas corpus* on the theory that, because appellant had voluntarily resigned, the Polygraph Act had not been violated. After a hearing, the court determined that the Commonwealth could not make out a *prima facie* case against appellee or Mr. Babish since appellant resigned, and the court granted writs of *habeas corpus*. No appeal was taken by the Commonwealth from the writs.

Appellant then filed this civil suit for wrongful discharge. Subsequently, the lower court granted summary judgment in favor of appellee. The court ruled that appellant was collaterally estopped from relitigating the issue of whether he was fired for refusing to take the polygraph test since that same issue had previously been resolved in appellee's favor when the criminal court granted appellee's petition for a writ of *habeas corpus*.

Recently, in *Grant v. GAF Corp.*, 415 Pa.Super. 137, 147–149, 608 A.2d 1047, 1053–1054 (1992), we reviewed the standards to be applied when the doctrine of collateral estoppel is applied and summary judgment is entered. Therein, we stated:

> When reviewing the grant of summary judgment, this court will reverse only if there has been an error of law or an abuse of discretion. *Jones v. Keystone Ins. Co.*, 364 Pa.Super. 318, 528 A.2d 177 (1987), *alloc. denied,* 518 Pa. 613, 540 A.2d 535 (1988). Where the pleadings, depositions, answers to interrogatories and admissions filed show no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Hedlund Manuf. Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357 (1988).
>
> Collateral estoppel is appropriate where: (1) the issue decided in the prior action was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity to a party to the prior

adjudication; and (4) the party against whom the plea is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *Safeguard Mutual Ins. Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); *Sanders v. Sanders,* 384 Pa.Super. 311, 558 A.2d 556 (1989). Summary judgment is properly granted on grounds of res judicata and/or collateral estoppel if there is no genuine issue of material fact and the pleadings, depositions, answer to interrogatories, admissions on file and supporting affidavits disclose that the moving party is entitled to judgment as a matter of law. *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 464 A.2d 1313 (1983).

■ First, we must determine whether the lower court's application of collateral estoppel was appropriate in this action. We are convinced that the issue presented in the criminal action against appellee is identical to that presented herein. In both cases, the central question is whether appellee discharged appellant due to his refusal to submit to a lie detector test. Thus, the first requirement for collateral estoppel is met by the facts of this case. *Grant, supra.* Although we are certain the issue is identical, we are not convinced that, in the context of the prior action, there was a "final judgment" on the merits, that appellant was in privity with the Commonwealth and that appellant had a "full and fair opportunity to litigate the issue".

■ We agree with the lower court that the granting of appellee's writ of *habeas corpus* in the prior criminal action was an appealable order. *Commonwealth v. Hetherington,* 460 Pa. 17, 23, 331 A.2d 205, 209 (1975).[4] However, we

4. While we agree that the granting of a writ of *habeas corpus* is a final, appealable order, we note that the granting of the writ is not an acquittal and only entitles the accused to liberty for the present, leaving him subject to rearrest on the identical charges, provided additional evidence sufficient to establish a *prima facie* case is presented. *Hetherington,* 331 A.2d at 208; *Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981); *McNair's Petition,* 324 Pa. 48, 54, 187 A. 498, 501 (1936).

Thus, we cannot say that the present granting of the writs in the prior criminal action are "final judgments" which can be used as a "shield" by appellee. The writs only meant that the Commonwealth did not

disagree with the lower court's conclusion that appellant could have appealed the criminal court's grant of the writs of *habeas corpus,* and his failure to do so rendered the criminal court's determination final. The lower court erroneously cites *Commonwealth v. Benz,* 523 Pa. 203, 565 A.2d 764 (1989) in support of its conclusion. In *Benz, supra,* a plurality of our Supreme Court held that the Superior Court had jurisdiction to hear an appeal from the decision of the court of common pleas to disapprove a private criminal complaint after the district attorney also disapproved the complaint based on his determination that there was insufficient evidence to establish a *prima facie* case. Although the *Benz* court did not specifically address the issue of whether the private affiant has standing to challenge on appeal a common pleas court's decision to disapprove a private criminal complaint, it did permit a private affiant to appeal. We also note that private affiants have been expressly permitted to appeal the trial court's decision to disapprove a private criminal complaint under Pa.R.Crim.P. 133. *See, Commonwealth v. Muroski,* 352 Pa.Super. 15, 506 A.2d 1312 (1986) (*en banc* ); *In re Wood,* 333 Pa.Super. 597, 482 A.2d 1033 (1984); *Commonwealth v. Eisemann,* 276 Pa.Super. 543, 419 A.2d 591 (1980).

While we certainly acknowledge that an affiant has standing to appeal the decision of the court of common pleas to disapprove his private criminal complaint, the aforecited cases, including *Benz, supra,* are inapposite presently. Herein, there exists a significant procedural difference. The prior criminal action resulted in the common pleas court's *approval* of the private criminal complaint after which only the Commonwealth, not the private affiant, controlled the prosecution of the case. Upon petition by appellee, the criminal court granted a writ of *habeas corpus* from which *only* the Commonwealth had standing to appeal. The case of *Common-*

establish a *prima facie* case with the evidence which it presented at that time. The writs do not establish that the Commonwealth could *never* make out a *prima facie* case in regards to the appellee's alleged violation of the Polygraph Act. Given the fact that the Commonwealth did not desire to prosecute the criminal action from its inception, appellant should not be bound by the district attorney's actions.

*wealth v. Malloy,* 304 Pa.Super. 297, 450 A.2d 689 (1982) is directly on point and so holds. *See also, Muroski,* 506 A.2d at 1314 (distinguishing *Malloy* ); *In re Wood,* 482 A.2d at 1035 (distinguishing *Malloy* ). Thus, it is clear that appellant did not have standing to appeal the grant of the writs of *habeas corpus* in the prior criminal action.

Therefore, we find that application of the doctrine of collateral estoppel was not appropriate in this case. First, there was not a "final judgment" *on the merits* since the Commonwealth could refile the charges if additional evidence became available. *Hetherington, supra; Genovese, supra.* Second, after the court of common pleas approved the private criminal complaint, the district attorney took exclusive control of the prosecution, and appellant was no more in privity with the district attorney than any other citizen of the Commonwealth. *Cf., Malloy, supra,* citing *Hutchinson v. Bank of Wheeling,* 41 Pa. 42, 45 (1861) and *Commonwealth v. Walker,* 468 Pa. 323, 331, 362 A.2d 227, 231 (1976).[5] And finally, appellant did not have a full and fair opportunity to litigate the issue. Appellant had no control over the prosecution once the court of common pleas approved the criminal complaint. Further, since appellant had no standing to appeal the grant of the writs, the Commonwealth's decision not to appeal from the writs does not finally resolve against appellant the issue of whether appellee fired appellant for refusing to submit to the polygraph. Collateral estoppel is simply inapplicable in the present case.

However, our inquiry does not end here. We must also decide whether, as a matter of law, appellant may maintain an action for wrongful discharge. As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990); *Clay v.*

---

**5.** In *Hutchinson, supra,* our Supreme Court stated: "The private wrong was not merged in the public one, nor is the public prosecution intended to supersede the private action. Their purposes are entirely different. The person wronged is not chargeable with the conduct of the prosecution, and therefore not affected by an acquittal."

*Advanced Computer Applications, Inc.*, 522 Pa. 86, 88, 559 A.2d 917, 918 (1989); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). An exception to this rule has been recognized in the most limited of circumstances, where the discharge of an at-will employee would threaten clear mandates of public policy. *Clay*, 559 A.2d at 918; *Rutherfoord v. Presbyterian–University Hospital*, 417 Pa.Super. 316, 612 A.2d 500 (1992). *See, e.g., Reuther v. Fowler & Williams*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee cannot be discharged for serving on a jury); *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980) (pardoned convict improperly refused employment because of criminal record); *Field v. Philadelphia Electric Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989) (employee improperly discharged for making a report required by Federal Nuclear Regulatory Commission).

Thus, we must decide whether an employer's discharge of an at-will employee due to the employee's refusal to submit to a polygraph examination impinges upon a clear mandate of public policy. Addressing the identical question, the Court of Appeals for the Third Circuit held: "We are satisfied that Pennsylvania's anti-polygraph statute embodies a 'recognized facet of public policy' of the type proscribed by the Pennsylvania courts in *Geary* and *Reuther*. Thus, if [the plaintiff's] discharge resulted from a refusal to submit to a polygraph examination, a cause of action exists under Pennsylvania law for tortious discharge." *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3rd Cir.1969). We agree with the Court of Appeals. The General Assembly of Pennsylvania has seen fit to proscribe the use of lie detector tests in employment situations and has made such action a misdemeanor of the second degree. 18 Pa.C.S.A. § 7321. The purpose of the statute was ably summarized in the analysis of a substantially similar statute by the Supreme Court of New Jersey:

There is no judicial control when an employer subjects his employee to a lie detector test and there is no licensing or other objective method of assuring expertise and safeguard in the administration of the test and the interpretation of its

results. Nor is there any assurance of true voluntariness for the economic compulsions are generally such that the employee has no realistic choice. Organized labor groups have often expressed intense hostility to employer requirements that employees submit to polygraph test which they view as improper invasions of their deeply felt rights to personal privacy and to remain free from involuntary self-incrimination.

*State v. Community Distributors, Inc.*, 64 N.J. 479, 484, 317 A.2d 697, 699 (1974). *See also,* Herman, *Privacy, The Prospective Employee, and Employment Testing: The Need to Restrict Polygraph and Personality Testing,* 47 Wash.L.Rev. 73, 99 (1972). Thus, we are satisfied that the discharge of an at-will employee for his refusal to submit to a polygraph test violates the public policy of this Commonwealth, and an action for wrongful discharge will lie. *See, Perks, supra. Cf., Moniodis v. Cook,* 64 Md.App. 1, 494 A.2d 212 (1985) (former employees were wrongfully, constructively discharged when, after refusing to submit to polygraph examinations, they were transferred to distant locations and their hours were changed).

■ Finally, we note that our research has not disclosed a decision of a court of this Commonwealth where the "constructive discharge" of an at-will employee has served as the basis for tort recovery upon a claim of wrongful discharge.[6] However, we do not believe that an employer should be shielded from liability simply because he has not uttered the words, "You are fired." Rather, we will impose liability for "constructive discharge" of an at-will employee "where the employ-

6.  In *Drohan v. Sorbus, Inc.,* 401 Pa.Super. 29, 584 A.2d 964 (1990), we addressed the question of whether a plaintiff who alleged he was constructively discharged for his persistence in challenging company policies which he considered unwise or injurious to his company could recover for wrongful discharge. We held, however, that the plaintiff's allegations did not raise an inference that he was "constructively discharged" due to his refusal to participate in illegal activities. Thus, appellant did not state a cause of action for wrongful discharge of an at-will employee under the public policy exception. *Drohan,* 584 A.2d at 972. While in *Drohan, supra,* we were presented with facts wherein a "constructive discharge" was alleged, we did not specifically address the issue of whether "constructive discharge" can serve as the factual basis for a successful wrongful discharge cause of action.

er makes working conditions so intolerable that the employee is forced to resign. See, e.g., *National Labor Relations Board v. Saxe–Glassman Shoe Corp.*, 201 F.2d 238 (1st Cir. 1953); *National Labor Relations Board v. Chicago Apparatus Corp.*, 116 F.2d 753 (7th Cir.1940)." *Pennsylvania Labor Relations Board v. Sand's Restaurant*, 429 Pa. 479, 484, 240 A.2d 801, 803 (1968). In so doing, we will employ the definition of "constructive discharge" as applied in cases litigated pursuant to the Pennsylvania Labor Relations Act, 43 Pa. C.S.A. § 211.1 *et seq.* See, *Sand's, supra.*[7]

■   Instantly, appellant has alleged that almost immediately following his refusal to undergo polygraph examination, he was demoted, his hours reduced from forty to sixteen per week, his pay rate reduced from $5.50 to $4.00 per hour and his job location was changed. Although it is undisputed that appellant resigned from his position, we believe that the question of whether a nearly 71% reduction in weekly wages constitutes a "constructive discharge" should be decided by the jury. *Cf., Moniodis v. Cook*, 64 Md.App. 1, 494 A.2d 212 (1985) (former employees were wrongfully, constructively discharged when, after refusing to submit to polygraph examinations, they were transferred to distant locations and their hours were changed).

7.   We also note that, in unemployment compensation litigation, our Commonwealth Court has stated:

"A claimant whose unemployment is due to voluntary termination bears the burden of proving that such termination was with cause of a necessitous and compelling nature; that is, circumstances which place a real and substantial pressure on the employee to terminate employment, and which would cause a reasonable person under like circumstances to do the same."  . . . We have held that a substantial reduction in pay can constitute a necessitous and compelling cause for a claimant to voluntarily terminate employment.

*No. 1 Cochran v. Unemployment Comp. Bd. of Review*, 135 Pa.Cmwlth. 252, 260, 579 A.2d 1386, 1390 (1990) (Citations omitted).

Further, in *Goss v. Exxon Office Systems Co.*, 747 F.2d 885 (3rd Cir.1984), the Court of Appeals for the Third Circuit ruled that, in employment discrimination litigation pursuant to Title VII, federal courts recognize a cause of action for wrongful discharge of an employee when the employee has been "constructively discharged", rather than fired. The definition of "constructive discharge" used in such litigation is the same as that set forth in *Sand's, supra.*

In sum, we find that the doctrine of collateral estoppel is inapplicable to this case, that a cause of action for wrongful discharge of an at-will employee exists when an employee is discharged for refusing to submit to a lie detector test and that the record reveals sufficient facts for the question of whether appellant was "constructively discharged" to go to trial.

Summary judgment reversed. Case remanded for trial. Jurisdiction relinquished.