2024 PA Super 213

| | | |
|---|---|---|
| KAREN M. CONSTANTINE, ADMINISTRATRIX OF THE ESTATE OF THOMAS A. CONSTANTINE, DECEASED, AND INDIVIDUALLY AS WIDOW IN HER OWN RIGHT | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : : | No. 2676 EDA 2022 |
| LENOX INSTRUMENT COMPANY, INC., AND ESTERLINE TECHNOLOGIES CORPORATION | : : : | |

Appeal from the Order Entered October 24, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  170600672

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

OPINION BY STABILE, J.:                    **FILED SEPTEMBER 17, 2024**

At issue here is whether Appellee, Esterline Technologies Corporation ("Esterline"), was properly dismissed from the case.  Appellant, Karen M. Constantine, administratrix of the estate of Thomas A. Constantine, deceased, and individually as a widow in her own right (collectively referred to here as "Constantine"), had attempted to pierce Esterline's corporate veil, alleging that it was liable for the negligent conduct of its subsidiary, Lenox Instrument Company, Inc. ("Lenox"), in causing the decedent's fatal mesothelioma.  Prior to trial, Esterline moved for summary judgment, arguing that its corporate

_____

[*] Retired Senior Judge assigned to the Superior Court.

veil could not be pierced as a matter of law. The motion was denied, but Esterline later moved to exclude any veil-piercing evidence at trial. A subsequent trial judge granted the motion, leading to Esterline's dismissal. Constantine went on to prevail against Lenox, and she now challenges Esterline's dismissal on the ground that it was precluded by the coordinate jurisdiction rule.[1] Finding merit in that contention, we reverse.[2]

The decedent was employed by Lenox as a draftsman and designer from 1972 to 1981. During most of that period, Lenox manufactured a fiber optic borescope called the "Lightsource," which was sold to the United States Navy. One component of this product was a heat shield made from a sheet of asbestos cement called a "transite" board.

The decedent was diagnosed with malignant mesothelioma in 2016, and in 2017, he alleged in the original complaint that this illness was caused by the fabrication of transite boards. During that process, the transite boards were sawed and drilled in Lenox's work areas, contaminating the space with asbestos dust that was inhaled by the decedent. He alleged that Lenox was negligent in exposing him to this hazard.

---

[1] Lenox and Constantine also have filed cross-appeals against each other. At docket number 2761 EDA 2022, Lenox asserts numerous evidentiary and constitutional issues. At docket number 2710 EDA 2022, Constantine challenges the trial court's denial of delay damages. Neither of those cross-appeals are germane to the issues in the present case.

[2] At docket number 4 EDM 2020, Constantine had sought interlocutory review of the order dismissing Esterline from the case, and review was denied.

In the first amended complaint, the operative pleading, Esterline was added as a defendant under the theory that it was liable for the conduct of Lenox. *See* First Amended Complaint, 4/6/2018, at ¶ 3. It was asserted further that Esterline was the parent company of Lenox, and that at the relevant times, it controlled Lenox to the extent that they must be treated as a single entity. *See id*. The decedent passed away on May 14, 2019, at which point Constantine became the representative of his estate.[3]

Esterline moved for summary judgment on April 5, 2019. In pertinent part, Esterline asserted that it could not be held liable for the decedent's injuries because it was unaware of his exposure to asbestos; the decedent was employed solely by Lenox; and Esterline was a distinct corporate entity from Lenox. *See* Esterline's Motion for Summary Judgment, 4/5/2019, at 5-13.

As to whether there was any evidence that would support piercing the corporate veil, Esterline summarized its position as follows:

> There is no evidence of corporate mismanagement as to Esterline, undercapitalization, failure of Esterline to adhere to corporate formalities, substantial intermingling of Esterline and Lenox's affairs or use of Lenox's corporate form to achieve Esterline's own ends. Accordingly, Esterline is entitled to summary judgment on all of [Constantine's] claims as a matter of law.

*Id*., at 13.

---

[3] Esterline filed preliminary objections challenging whether the pleadings were sufficiently specific with respect to the basis for its liability, and the objections were overruled.

Constantine opposed Esterline's summary judgment motion on the ground that Esterline "had failed to maintain Lenox's corporate existence," and exercised near complete control over its finances and operations. Plaintiff's Opposition to Esterline's Motion for Summary Judgment, 4/19/2019, at 2, 13-17.

It was undisputed that Esterline was the sole shareholder of Lenox from 1974 to 1981, and that the labelling on the Lightsource device bore the Esterline logo and referred to Lenox as a "unit" of Esterline. Constantine further asserted that:

> once Esterline became Lenox's sole shareholder, none of the individuals at Lenox who had previously run the company (*i.e.*, John Lang, Sr., John Lang, Jr., Paul Lang or William Lang) held any corporate positions. John Lang, Sr. was designated the "General Manager" of Lenox, a position more suited to an unincorporated division, and, upon his death, John Lang, Jr. was given the title of " General Manager." Of note, after the Lang brothers purchased the stock of Lenox from Esterline [in 1981], the family members assumed proper corporate positions. William Lang, for example, became a corporate vice-president of Lenox.
>
> Indeed, there is no evidence whatsoever that Esterline, during the period of time that it was Lenox's sole shareholder, took the necessary steps to maintain any corporate formalities with respect to Lenox:
>
> - There was no annual shareholders' meeting.
>
> - There was no duly elected Board of Directors for Lenox.
>
> - There were no duly appointed (by the Lenox Board of Directors) corporate officers for Lenox (e.g., President, Vice-President, Corporate Secretary, Corporate Treasurer, etc.).

- There is no evidence that, during the entire relevant period, Lenox ever took any action in its capacity as a separate and distinct corporate entity by way of a duly enacted corporate resolution.

*Id*., at 14-15.

In addition to its documentary evidence, Constantine's corporate veil claims were corroborated by the testimony of the brothers, John W. Lang, Jr. and William J. Lang. They testified in their depositions, both taken on March 26, 2019, that their father had served as the "general manager" of Lenox until his death in 1974, at which point they, along with a third brother, Paul Lang, began running the company "within limits" imposed by Esterline. ***See id***., at Exhibit A (Deposition of William J. Lang, 3/26/2019, at 25-27).[4]

The Lang brothers were supervised by the Esterline executive, John Kane, the president of "Federal Products," which was a division of Esterline. *Id*., at 26. Esterline "controlled the finances," and Kane would visit the Lang brothers regularly to oversee all aspects of Lenox's business operations. *Id*., at 27-28. Lenox "didn't have the ability to do any financing at any time," but rather had to rely on Esterline's directives with respect to any financial decisions that it made. *Id*., at 30-32. Esterline also had the final word on Lenox's hiring decisions, whether they could bid for government contracts, and how much inventory to be kept in stock. ***See id***., at 38-39, 153-54. Lenox's bills were paid out of an "Esterline account." ***See id***., at 280.

_____

[4] The Langs purchased Lenox back from Esterline in 1981.

Constantine also referenced Esterline's annual reports to demonstrate that Lenox was not operating as an independent entity once it became a fully owned subsidiary. Lenox was consistently referred to in the reports as a division of Esterline that produced some of the instruments in Esterline's product line. *Id*., at 13-17 (internal citations omitted).

The summary judgment motion was heard by the Honorable Arnold L. New, who denied the motion on May 20, 2019, without a hearing. Esterline moved for reconsideration on June 18, 2019, and it was denied on July 3, 2019. Soon thereafter, the case was assigned to the Honorable D. Webster Keogh.

On December 2, 2019, Esterline filed its "Motion *in Limine* to Preclude Any Reference, Argument, inference or Mention of Esterline's Corporate Veil, Duties of Shareholders, Fiduciary Duty, Abuse of the Corporate Form, or Requesting this Court to Pierce Esterline's Corporate Veil" (Corporate Veil Motion). Esterline argued therein that there was "no evidence to defeat Esterline's corporate structure," and that all evidence that would pierce its corporate veil should be excluded from trial on admissibility grounds. ***See*** Corporate Veil Motion, 12/2/2019, at 4.

Esterline presented documents showing that, at the relevant times, Lenox had its own president, board of directors, and officers; Lenox had a federal employer identification number; Lenox had an appointed date for annual corporate meetings; and Lenox filed annual reports to the Delaware

Department of State. Additional exhibits showed that Lenox had its own employees, customers, and suppliers. *See id*., at 4-7. Moreover, Esterline produced the insurance policies that it had procured for Lenox during the period of the decedent's employment. *See id*., at 8-9.

Constantine filed her Opposition to the Corporate Veil Motion, arguing first that Esterline already had litigated the issue unsuccessfully when its summary judgment motion was denied by Judge New. *See* Plaintiff's Opposition to Corporate Veil Motion, 12/7/2019, at 9. She also addressed some of the points raised by Esterline in its Corporate Veil Motion, relying on the testimony of William J. Lang that he and his brothers were given corporate titles, but that in practice, "no Lenox shareholder meetings were held, no corporate Directors were elected, no meetings of a Lenox Board of Directors were held, and no corporate officers were appointed." Plaintiff's Opposition to Corporate Veil Motion, 12/7/2019, at 9 (citing Deposition of William J. Lang, 10/11/2019, at 107-09).

Moreover, Constantine demonstrated that a number of Esterline executives served as officers and directors of Lenox "to the extent that Esterline completely dominated Lenox." *Id*., at 9. This was especially the case after John W. Lang, Sr. passed away and Lenox become a fully owned subsidiary of Esterline in 1974. *See id*., at Exhibit 6. Constantine also gave an example of Esterline's interference in Lenox's day-to-day operations, describing how it was forced by John Kane to purchase an inferior lathe from

another Esterline company rather than the superior lathe a Lenox employee had been specially trained to use. ***See id***., at 8-9.

On December 9, 2019, Esterline filed a Reply to Constantine's Opposition to its Corporate Veil Motion. The lion's share of the record evidence cited by Esterline in its Reply was drawn from William J. Lang's first deposition taken on March 26, 2019. ***See*** Reply to Plaintiff's Opposition to Corporate Veil Motion, 12/9/2019, at 3-5. That same deposition had been cited extensively by the parties when they litigated Esterline's motion for summary judgment before Judge New.

Esterline's Corporate Veil Motion was granted, leading to its dismissal from the case. Judge Keogh found that Esterline's role in the operation of Lenox was consistent with "the basic principles of business formation[.]" Trial Court Findings on Motions *In Limine*, 12/23/2019, at 1. Since Esterline "had no direct or indirect involvement in what Lenox manufactured that incorporated the transite at issue for the product being produced for Lenox's military contract[,]" the corporate veil could not be pierced. ***Id***.

Constantine proceeded to trial solely against Lenox. A non-jury trial was held before a third judge who was assigned to the case, the Honorable Kenneth J. Powell, Jr. Ultimately, Constantine obtained a judgment against Lenox in the amount of $2,327,596.76. She timely filed an appeal, and Judge Powell entered a 1925(a) opinion giving the reasons why Judge Keogh's order dismissing Esterline from the case should be upheld:

[B]oth Lenox and Esterline adhered to corporate formalities and the two corporations did not substantially intermingle corporate and person[al] affairs. Lenox developed its business strategies without Esterline's control and had its own employees, customers, vendors, and suppliers. Esterline conducted its payroll independently from Lenox. The Navy contract [for the Lightsource] was between the United States Navy and Lenox, not Esterline. Esterline did not direct Lenox how to conduct its business. Lenox did not need approval from Esterline for the selection of its product base or what Lenox wanted to sell. Furthermore, the Agreement and Plans of Reorganization between Esterline and Lenox demonstrate intent to remain separate entities.

First, Esterline owned thirty subsidiary companies, not only Lenox. Second, each corporation made representations regarding their separate financial stability. Lenox did agree to obtain approval from Esterline before conducting certain types of business. However, this was solely for Esterline to protect its investment, a standard practice. Finally, Lenox's Board of Directors was comprised entirely of owners and employees of Lenox who were a part of Lenox before its agreement with Esterline. Accordingly, Lenox and Esterline adhered to corporate formalities and did not substantially intermingle corporate and person[al] affairs.

Trial Court 1925(a) Opinion, 3/2/2023, at 5-6 (internal citations omitted).[5]

In her initial brief, Constantine raised three related issues, which we condense into a single claim – whether Judge Keogh erred in violating the coordinate jurisdiction rule by granting Esterline's Corporate Veil Motion after Judge New had found there to be disputed issues of material fact as to the

_____

[5] In the above cited portion of his 1925(a) opinion, Judge Powell primarily cited the deposition of William J. Lang when discussing the corporate veil issue. **See** Trial Court 1925(a) Opinion, 3/2/2023, at 5. Judge Powell also found that there was no evidence that the corporate form had been used to perpetuate a fraud; nor was there evidence that Lenox was undercapitalized. **See** Trial Court 1925(a) Opinion, 3/2/2023, at 4-6. Constantine had not sought to pierce the corporate veil on either of those grounds.

separate corporate existence of Esterline and Lenox. *See* Appellant's Brief, at 9-11.

Moreover, while this appeal was pending, Constantine sought leave to file supplemental briefing in light of our Supreme Court's decision in ***Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Services***, 310 A.3d 742 (Pa. 2024), which involved the application of the coordinate jurisdiction rule. The request was granted, and Esterline was permitted to respond. Constantine emphasized ***Ivy Hill's*** holding that "[w]hile a ruling issued at a different stage of the proceedings may give rise to one of the limited exceptions to the coordinate jurisdiction rule – for example, a change in the facts – **it is the demonstration of the exceptional circumstance, not the distinct procedural posture, which renders [the rule] inapplicable**." ***Ivy Hill***, 310 A.2d at 758 (emphasis added).

In its own supplemental brief, Esterline acknowledges that ***Ivy Hill*** eliminates the procedural posture of the case as a factor for determining the applicability of the coordinate jurisdiction rule. *See* Appellee's Supplemental Brief, at 4. Esterline argues nonetheless, that Judge Keogh did not err because its new evidence of Lenox's independent corporate existence constituted exceptional circumstances that made Judge New's prior ruling non-binding.

Esterline argues for example, that Judge New denied Esterline's motion when there was no evidence that Esterline had provided liability insurance for

Lenox, and there was little documentation of its adherence to corporate formalities. After that ruling, Esterline produced evidence that it had honored its obligation to provide Lenox with liability insurance; Esterline also located corporate records purportedly showing that Lenox operated independently of its oversight. According to Esterline, Judge Keogh only made an evidentiary ruling (different from Judge New's ruling on the sufficiency of the evidence) which then necessitated Esterline's dismissal.

Our disposition of the issues at hand requires us to navigate the interplay between the summary judgment standard, corporate veil principles, and the coordinate jurisdiction rule. Summary judgment may only be granted where the record shows that there exist no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa. Super. 2006). In determining whether summary judgment is proper, a court must view all evidence in the light most favorable to the non-moving party and resolve all doubts about the existence of a material fact against the moving party. *See id*. "[A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010). A determination of whether "there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*." *Id*.

A corporation may be entitled to summary judgment on a veil piercing theory upon a showing that it is a distinct entity from the party responsible for the tortious conduct. *See Smith v. A.O. Smith Corp.*, 270 A.3d 1185, 1191-92 (Pa. Super. 2022). "Piercing the corporate veil is . . . a matter of equity, allowing a court to disregard the corporate form and assess one corporation's liability against another." *Mortimer v. McCool*, 255 A.3d 261, 268 (Pa. 2021). "Any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Id*.

Factors that are relevant to the veil piercing inquiry include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetrate a fraud." *Lumax Industries, Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). Adherence to corporate formalities may be established where "corporate records [have been kept], . . . [and] whether officers and directors other than the dominant shareholder himself actually function[.]" *The Village at Camelback Prop. Owners Assc., Inc. v. Carr et al.*, 538 A.2d 528, 533 (Pa. Super. 1988).

As a preliminary matter, we agree with Constantine's position that the Corporate Veil Motion decided by Judge Keogh in Esterline's favor was a second motion for summary judgment. In the operative complaint, Constantine identified Esterline as a defendant in this case based in part on a

lack of corporate formalities separating Lenox and Esterline. Judge New denied Esterline's motion for summary judgment, necessarily finding that there existed a genuine issue of material fact as to whether Esterline and Lenox were separate corporate entities.

Esterline's Corporate Veil Motion was styled as a motion *in limine*, but the grounds in the motion only nominally related to the admissibility of Constantine's evidence. The content of the motion, and not its title, is what matters for present purposes.

Generally speaking, motions *in limine* are used to preclude the presentation of evidence that a party considers inadmissible or prejudicial. *See Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) ("A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence."). By contrast, motions for summary judgment are dispositive motions meant to test pre-trial the sufficiency of the evidence based upon an assertion that there are no material facts in dispute on a claim. *See Ertel v. Patriot News Co.*, 674 A.2d 1038, 1042 (Pa. 1996) ("We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case (or, in some matters, issues in a case) where a party lacks the beginnings of evidence to establish or contest a material issue.").

In substance, Esterline's Corporate Veil Motion was clearly an attempt to have Judge Keogh revisit whether summary judgment should be granted. The reasons given by Judge Keogh and Judge Powell for granting summary

judgment had nothing to do with the admissibility of Constantine's evidence. They focused solely on the sufficiency of the evidence supporting Constantine's attempt to pierce Esterline's corporate veil, just as Judge New did. *See* Trial Court 1925(a) Opinion, 3/2/2023, at 5-6. It follows that Judge Keogh's order may only be upheld if it was justified by "exceptional circumstances" that would render the coordinate jurisdiction rule inapplicable – *i.e.*, a substantial change in the facts and evidence which would lead to a manifest injustice.

We find that such exceptional circumstances did not justify the order granting the Corporate Veil Motion because Esterline did not put forth substantially different evidence than what was before Judge New at the time the first summary judgment motion was denied. That is, the material questions of fact that existed when Judge New presided were not later resolved as a matter of law in Esterline's favor by a material change of facts or evidence.[6]

The central dispute between the parties on the corporate veil issue was whether Esterline adhered to corporate formalities and allowed Lenox to

---

[6] As recently held in *Ivy Hill*, the different procedural postures of the case at the times when Esterline's motions were decided is of no moment. Our Supreme Court clarified in *Ivy Hill* that the coordinate jurisdiction rule will apply regardless of the stage at which an issue is decided. *See Ivy Hill*, 310 A.3d at 758 ("[I]t is the demonstration of exceptional circumstances, not the distinct procedural posture, which renders the coordinate jurisdiction rule inapplicable.").

operate as an independent entity during the decedent's employment from 1972 and 1981. There was conflicting evidence on those points when Judge New denied Esterline's motion for summary judgment, and the conflicts in the evidence persisted when Judge Keogh dismissed Esterline from the case.

Lenox was fully owned by Esterline from 1974 to 1981. During that span, the products manufactured by Lenox were packaged in boxes bearing Esterline's logo, as well as the declaration that Lenox was a "unit" of Esterline. Lenox officers, or managers, testified that Esterline executives made all final decisions with respect to every aspect of Lenox's business, including financing, hiring and firing employees, and bidding for contracts. Constantine also gave examples of instances in which Esterline overrode Lenox employees on day-to-day operations.

Constantine alleged further that Lenox did not have a functioning board of directors; that the board had never convened, and that Lenox was ultimately controlled by Esterline's corporate officers. William J. Lang's testimony, as well as a roster of Lenox's nominal board and corporate officers during the years of the decedent's employment, corroborated those allegations. Although Judge Powell observed that "Lenox's Board of Directors was comprised entirely of owners and employees of Lenox who were a part of Lenox before its agreement with Esterline," *see* Trial Court 1925(a) Opinion, 3/2/2023, at 6, this was incorrect.

Constantine produced Esterline's Annual Reports from 1970 through 1979. They showed that John W. Lang, Sr. served as president of Lenox from 1970 until his death near the end of 1974. Esterline then purchased all of Lenox's shares, and the Lang brothers were phased out of Lenox's corporate structure. **See generally** Plaintiff's Opposition to Corporate Veil Motion, 12/7/2019, at Exhibit G (summarizing lists of Lenox's Board of Directors and Officers from Esterline's Annual Reports).

In 1975, John W. Lang Jr. was named president of Lenox, though he testified that his role was really that of a manager, who had no power as a corporate officer. From 1976 to 1979, the Lenox Board of Directors was comprised entirely of Esterline executives. In 1977, John W. Lang, Jr.'s title was changed to "General Manager" of Lenox, reflecting the demotion and the loss of his seat on the Lenox Board. **See id**.

By 1978, John Kane, an Esterline Vice-President, had been installed as the president of Lenox. The terms of the Lenox Board of Directors and Officers were open-endedly set to expire "when successor elected and qualified." **See id**. It appears that no such elections ever took place.

Crucially, Esterline failed to rebut Constantine's claim with evidence that, in practice, the Lenox Board of Directors actually functioned. The voluminous record in this appeal contains no documentation to that effect, such as board of director resolutions or the minutes of any annual meetings. This created a material question of fact as to whether Esterline adhered to

corporate formalities, and we discern no error on the part of Judge New in making that determination. ***See generally McCool***, 255 A.3d at 286 (recognizing that Pennsylvania has traditionally "resisted the temptation to formalize the inquiry with an ever-increasing number of predefined factors" relevant to piercing analysis, but noting that overlapping corporate officers and directors may be one such factor); ***see also The Village***, 538 A.2d at 533 (same).[7]

While Esterline subsequently presented some new evidence following Judge New's denial of summary judgment, this evidence did not conclusively establish that it had maintained corporate formalities between it and Lenox. Nor did it refute Constantine's evidence to the extent that summary judgment had to be granted for Esterline as a matter of law. More importantly, *there is no indication in the record that either Judge Keogh or Judge Powell considered any new evidence which Judge New had not already assessed*.

In the 1925(a) opinion, on the issue of whether Esterline had maintained corporate formalities, Judge Powell relied almost entirely on the testimony of

---

[7] Even if we were only to review the sufficiency of the evidence supporting Judge New's ruling allowing Constantine to pierce Esterline's corporate veil, that ruling would stand. Constantine presented legally sufficient evidence that Esterline had failed to adhere to corporate formalities, and Judge New credited that evidence. ***See Lomas v. Kravitz***, 130 A.3d 107, 128 (Pa. Super. 2015) (affirming order allowing piercing of the corporate veil because the fact-finder made credibility determinations which could not be overturned due to evidence in the record supporting them).

William J. Lang, from his deposition on March 26, 2019. **See** Trial Court Opinion, 3/2/2023, at 5-6 (citing Exhibit D of Esterline's Corporate Veil Motion).[8] This is noteworthy because the parties already had debated the import of that *same testimony* when they litigated Esterline's summary judgment motion before Judge New. **See e.g.**, Esterline's Motion for Reconsideration of Motion for Summary Judgment, 6/18/2019, at 6-7 (citing Exhibit 8 (Deposition of William J. Lang, taken on March 26, 2019)).

By deciding an identical issue based on identical evidence, Judge Keogh overturned the prior ruling of another judge who had presided on the case, in the absence of a substantial change in law, facts, or evidence. This violated the coordinate jurisdiction rule, and to remedy that violation, the order on review must be vacated. **See e.g., Campbell v. Attanasio**, 862 A.2d 1282, 1286-87 (Pa. Super. 2004) (holding that the coordinate jurisdiction rule was violated because a party's motion *in limine* and motion for summary judgment raised the same issue, and cited on the same evidence, and there was no indication that the successor judge relied on additional facts); **see also Rellick-Smith v. Rellick**, 261 A.3d 506, 518-19 (Pa. 2021) (holding that coordinate jurisdiction rule precluded successor trial judge from overruling

_____

[8] Judge Powell also briefly referred to the Agreement and Plans of Reorganization entered between Esterline and Lenox when the former corporation became the sole shareholder of the latter in 1970. **See** Trial Court Opinion, 3/2/2023, at 5-6. However, that document was not material, and it too was already in evidence at the time Judge New denied Esterline's summary judgment motion.

prior judge's finding that a statute of limitations defense had been waived, as the legal issue and evidence before both judges were identical).

In light of the foregoing, we reverse and remand for a new trial on the sole question of whether Esterline is liable for the negligent conduct of Lenox. Constantine's theory of liability as to Esterline was that its corporate veil between it and Lenox should be pierced because at the relevant times they were a single entity. Since Lenox's liability already has been established, it is not necessary for a new trial to be held as to both defendants on that matter. Only the question of fact concerning the corporate veil issue remains to be decided.

Order vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/17/2024